**Byron JOHNSON, Willie Anderson, Dorothy Robinson, Veronica Powell, and Linda Dickey, Plaintiffs,**

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT, Frank Petruzielo, and Faye Bryant, Defendants.**

**Civil Action No. H–93–2588.**

United States District Court, S.D. Texas, Houston Division.

May 13, 1996.

Laurence W. Watts, Watts & Associates, Houston, TX, for plaintiffs.

Kelly Frels, Bracewell & Patterson, Houston, TX, for defendants.

### MEMORANDUM AND ORDER

LAKE, District Judge.

Plaintiffs, Byron Johnson, Willie Anderson, Dorothy Robinson, Veronica Powell, and Linda Dickey, bring this action pursuant to 42 U.S.C. § 1983 against defendants, the Houston Independent School District, Frank Petruzielo, and Faye Bryant, for race discrimination and retaliation in violation of rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that their constitutional rights were violated when they were de-

nied a pay grade increase in September of 1989 and when they were reassigned from supervisory to teaching positions in August of 1991. Plaintiffs seek actual damages, punitive damages, prejudgment interest, attorneys' fees, costs of court, and such other and further relief both at law and in equity to which they may be entitled. Pending before the court is defendants' motion for summary judgment (Docket Entry No. 21). For the reasons set forth below, defendants' motion will be granted.

## I. *Factual Background*

From at least June of 1989 until September of 1991 plaintiffs were employed by HISD as Special Education Instructional Supervisors (SEIS). On July 12, 1989, Bryant, the Deputy Superintendent for Campus Management, wrote and distributed a memorandum to instructional supervisors stating that a pay grade raise from level 31 to level 34 had been approved by the School Board for all instructional supervisors.[1] The memorandum stated:

> In the approval of the 1989–90 District budget the General Superintendent's recommendation for a change in pay grade for the District's Special Education Supervisors, Bilingual Instructional Supervisors, Special Program Supervisors (Chapter I) and Regular Instruction Supervisors was approved. Effective September 1, 1989 these positions will move to pay grade 34.[2]

On September 15, 1989, however, Bryant wrote and distributed a second memorandum stating that only the regular instructional supervisors would receive the pay grade increase. Special education supervisors, bilingual instructional supervisors, and special program supervisors would not receive the pay grade increase. The second memorandum stated:

I had communicated to you in a July 12th memorandum regarding a change in pay grade for the 1989–90 school year. That decision has since been reconsidered and revised in both the budget and personnel implementation plans.

The regular Instructional Supervisors have been placed in pay grade AD34 as originally planned. The Bilingual and Special Education Instructional Supervisors have been upgraded to pay grade 31.[3]

In 1991 the Board declared a financial emergency and ordered Petruzielo, HISD's General Superintendent, to reduce the District's budget by approximately $20,000,000.[4] As a result of the financial emergency the District implemented a reduction-in-force (RIF).[5] One-hundred one supervisor positions were eliminated in the special education department, and in their place 27 coordinator positions were created in 11 exceptional education categories.[6] The RIF thus eliminated 74 special education supervisor positions. Plaintiffs were among the group of 74 supervisors whose positions were eliminated.[7] The supervisors who were affected by the RIF were reassigned to other positions.[8] No supervisors were terminated as a result of the RIF and none suffered a loss of pay or benefits during the 1991–1992 school year.[9] Those who were reassigned to classroom teacher positions and remained in those positions beyond the 1991–1992 school year did experience a reduction in pay for subsequent school years. Johnson, Powell, and Anderson were reassigned to classroom teaching positions; Robinson was reassigned to a librarian position; Dickey applied for and received one of the 27 coordinator positions.[10] Johnson, Anderson, and Robinson all applied for the coordinator positions but

---

1. See Bryant affidavit, Exhibit C attached to Docket Entry No. 21.

2. See Exhibit B attached to Docket Entry No. 25.

3. See Exhibit C attached to Docket Entry No. 25.

4. See Hicks affidavit, Exhibit B attached to Docket Entry No. 21 at p. 1.

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.* at pp. 1–2.

9. *Id.* at p. 2.

10. *Id.*

were not selected.[11] Johnson retired from HISD effective May 31, 1994; Robinson retired effective January 31, 1992; Powell and Anderson remain in their reassigned classroom teaching positions.

Plaintiffs challenged HISD's failure to increase their pay grade and its decision to eliminate their supervisory positions and reassign them to classroom teaching positions through the grievance process.[12] The Step 1 hearing officer determined that plaintiffs were not entitled to a pay grade increase in 1989 and that the elimination of their supervisory positions and their reassignments were attributable to a RIF necessitated by a financial exigency and not to improper reasons of retaliation or race discrimination.[13] The Step 2 hearing officer upheld these findings.[14] Pursuant to an agreement reached by the parties to proceed on the record below, the Step 3 hearing officer upheld the decision and adopted the findings and rationale entered by the Step 2 hearing officer.[15] On August 19, 1993, plaintiffs filed this action (Docket Entry No. 1).

## II. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on plaintiffs' claims because they are time barred. Alternatively, the individually named defendants argue they are entitled to summary judgment on claims asserted against them in their official capacities because these claims duplicate those asserted against HISD, and all the defendants argue that they are entitled to summary judgment on plaintiffs' claims for race discrimination and retaliation asserted under 42 U.S.C. § 1983 because plaintiffs cannot establish either the violation of a constitutionally protected right or the existence of a custom or policy pursuant to which such right was violated. Plaintiffs argue that their claims are not time barred and that defendants are not entitled to summary judgment on their claims for race discrimination

and retaliation because their summary judgment evidence raises questions of material fact concerning the deprivation of rights guaranteed by the First Amendment and by the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## A. Summary Judgment Standard

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed.R.Civ.P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–27, 106 S.Ct. at 2553–2554) (emphasis in original). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id.* (citing *Celotex*, 477 U.S. at 323–27, 106 S.Ct. at

11. *Id.*

12. See Exhibits G, H, and I attached to Docket Entry No. 21.

13. See Exhibit G attached to Docket Entry No. 21.

14. See Exhibit H attached to Docket Entry No. 21.

15. See Exhibit I attached to Docket Entry No. 21.

282

2553–2554). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

## B. Official Capacity Claims Against Petruzielo and Bryant

Plaintiffs have sued Petruzielo, the former superintendent, and Bryant, an administrator, in their official capacities.[16] Petruzielo and Bryant argue that the claims asserted against them in their official capacities should be dismissed because they duplicate claims against HISD. Petruzielo and Bryant are local government officials who may be sued in either their official and/or their personal capacities. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The real party in interest in an official-capacity suit is the governmental entity and not the named official. *Hafer,* 502 U.S. at 23–25, 112 S.Ct. at 361; *Graham,* 473 U.S. 159, 105 S.Ct. 3099. Because the claims asserted against Petruzielo and Bryant in their official capacities are actually claims against HISD, and because plaintiffs have asserted identical claims against HISD, the claims asserted against Petruzielo and Bryant in their official capacities duplicate those asserted against HISD. The presence of Petruzielo and Bryant in this lawsuit as defendants sued in their official capacities is therefore unnecessary. *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106, n. 14 (there is no longer a need to bring official-capacity actions against local government officials, for under *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), local government units can be sued directly for damages and injunctive or declaratory relief). Accordingly, Petruzielo and Bryant are entitled to summary judgment on claims asserted against them in their official capacities.

## C. Claims Against HISD Asserted Pursuant to § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. A complaint under § 1983 must allege that the violative act occurred under color of state law and that the complaining party was deprived of a right guaranteed by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535–37, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In suits brought against local governmental entities plaintiffs must also show that the constitutional deprivation was caused by an official custom or policy of the governmental entity. *Monell,* 436 U.S. at 688–90, 98 S.Ct. at 2035–2036. Plaintiffs assert causes of action for violations of the First Amendment and of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendants argue that they are entitled to summary judgment on plaintiffs' § 1983 claims because they are barred by limitations or, in the alternative, because plaintiffs' rights to free speech, due process, and equal protection were not violated by HISD's failure to increase their pay grade in 1989 or by its decision to reassign them to classroom teaching positions in 1991.

### 1. Limitations

In § 1983 cases federal courts apply the forum state's general personal injury limitations period. *See Owens v. Okure,* 488 U.S. 235, 249–51, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989). In Texas the limitations period for personal injury actions is two years. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a). Federal law is used to determine the accrual of claims arising under § 1983. *Gartrell v. Gaylor,* 981 F.2d 254, 257 (5th Cir.1993). Under federal law the limitations period begins to run once plaintiff is aware that he has suffered an injury or has sufficient information to know that he has been injured. *Piotrowski v. City of Houston,* 51 F.3d 512, 516 (5th Cir.1995). A plaintiff's

**16.** By Order entered February 28, 1996, the court dismissed claims asserted against defendants Petruzielo and Bryant in their individual capacities (Docket Entry No. 19).

awareness encompasses two elements: (1) the existence of the injury and (2) the connection between the injury and the defendant's actions. *Id.* A plaintiff need not realize that a legal cause of action exists, he need only know the facts that would support a claim. *Id.* Moreover, a plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further. *Id.*

### a. 1989 Pay Increase

■ HISD argues that plaintiffs' claims for retaliation and race discrimination arising from their failure to receive a pay grade increase in 1989 is time barred because this action was not filed until August of 1993, almost four years after the pay raise was denied. Plaintiffs respond that their claim for a pay increase is not time barred because they did not become aware of HISD's discriminatory intent until August of 1991 when they were notified that their positions had been eliminated and that they would be reassigned to classroom teaching positions.

The undisputed summary judgment evidence establishes that plaintiffs, along with all the other Special Education Instruction Supervisors, were notified by their superiors that the Board had increased their pay grade from level 31 to level 34 in July of 1989. Plaintiffs assert that the notification came from "person(s) who had the authority to speak for H.I.S.D.," and that "these representations were circulated in a written form by Defendant Faye Bryant, on July 12, 1989."[17] Nevertheless, plaintiffs admit that "on September 15, 1989, Defendant Faye Bryant sent another memorandum in essence retracting the previous statements of July 12, 1989."[18] Plaintiffs also admit that they "had been complaining and voicing their concerns related to the Special Education Program to their respective immediate supervisors[19] ... long before July of 1989."[20] Plaintiffs' concerns included their beliefs that they were entitled to a pay grade increase and that HISD's special education program misplaced and misdiagnosed students and misappropriated public funds. Plaintiffs argue that their claim for the lost pay grade increase did not accrue until August of 1991 when the Board voted to eliminate their positions and when they "learned that they were being reassigned and/or demoted under the pre-text of budgetary crisis."[21] The court is not persuaded by this argument.

Because plaintiffs learned of HISD's decision not to increase their pay grades from level 31 to level 34 in September of 1989 and because plaintiffs admit that they had been complaining both of HISD's failure to raise their pay and of HISD's improper administration of the special education program "long before July of 1989," the summary judgment evidence establishes that by September of 1989 plaintiffs were aware of facts that would support a claim: They knew that they had been injured, that HISD was responsible for their injuries, and that HISD's decision not to increase their pay grades may have been motivated by retaliation and race discrimination. The court therefore concludes that any cause of action the plaintiffs may have had for HISD's failure to increase their pay grade in 1989 accrued—at the latest—by September of 1989. Because this action was not filed until August of 1993, plaintiffs' claim for the failure to increase their pay grade in 1989 is time barred.

### b. Reassignment

HISD argues that plaintiffs' claims for retaliation and race discrimination arising out of their reassignment from supervisory to classroom teaching positions are also time barred because they were notified of the proposed elimination of their positions and necessary reassignments prior to August 19, 1991. Because HISD concedes that the Board did not adopt the RIF plan until August 21, 1991, the court concludes that plaintiffs' claims arising from the reassignment implemented due to the RIF are not time barred.

---

17. Docket Entry No. 25 at p. 3.

18. *Id.*

19. *Id.*

20. *Id.* at pp. 3 and 4.

21. *Id.* at p. 6.

## 2. Violation of Constitutional Rights

■ When asserting claims for race discrimination and retaliation an employee who has suffered an adverse action bears the initial burden of showing that his race and/or his constitutionally protected conduct motivated the adverse action. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Kirkland v. Northside Independent School Dist.,* 890 F.2d 794, 797 (5th Cir.1989), *cert. denied,* 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). Once the employee makes an initial showing the burden shifts to the employer to show that it would have taken the same employment action even absent the employee's race and/or protected conduct. *Mt. Healthy,* 429 U.S. at 286–87, 97 S.Ct. at 576; *Kirkland,* 890 F.2d at 797. The employee can refute the employer's showing by demonstrating that the employer's explanation for the adverse action is merely pretextual. *Coughlin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991).

### a. First Amendment

■ Plaintiffs allege that they were reassigned from their positions as instructional supervisors in retaliation for exercising their First Amendment right to speak out against their entitlement to a pay grade increase and their beliefs that the special education program improperly placed or diagnosed students and misused public funds. HISD argues that it is entitled to summary judgment on plaintiffs' First Amendment claims because their speech did not address matters of public concern, and because they have failed to present summary judgment evidence establishing that their speech motivated HISD's decision to eliminate their positions as instructional supervisors and reassign them to classroom teaching positions.

■ Although the First Amendment protects the right of all persons to speak freely and to associate together in groups to further their lawful interests, the exercise of those rights by public employees is not abso-

lute when it conflicts with their roles as public employees. *Kinsey v. Salado Independent School Dist.,* 950 F.2d 988, 992 (5th Cir.) (en banc), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 201 (1992). In analyzing whether a public employee's asserted activity is protected by the First Amendment courts distinguish between cases involving only speech, only association, or a combination of the two. When, as in this case, only speech is at issue two showings are necessary to establish that the employee's conduct is protected by the First Amendment. First, the speech must be shown to have addressed a matter of public concern.[22] *Id.* Second, the interests of the public employee as a citizen in speaking on matters of public concern must be shown to outweigh the interests of the state as an employer in promoting the efficiency of its public services. *Id.; Coughlin,* 946 F.2d at 1156–1157. *See also Connick,* 461 U.S. at 146–52, 103 S.Ct. at 1690–1692 (1983); *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois,* 391 U.S. 563, 566–70, 88 S.Ct. 1731, 1734–1735, 20 L.Ed.2d 811 (1968).

■ Assuming without deciding that plaintiffs' speech was protected by the First Amendment, the court concludes that HISD is entitled to summary judgment on these claims because plaintiffs have failed to adduce any summary judgment evidence establishing that their speech motivated HISD to eliminate their positions and reassign them to classroom teaching positions. Affidavits submitted by Rose Hicks, Deputy Superintendent for Educational Programs at the time of plaintiffs' reassignments and the hearing officer who presided over Step 2 of plaintiffs' grievance hearings, and by Faye Bryant, Deputy Superintendent for Campus Management at the time plaintiffs were reassigned to classroom teacher positions, state that HISD's decision to eliminate the special education instructional supervisor positions and to reassign the employees who held those positions was motivated by a RIF implemented to address a financial emergency

---

22. Whether speech involves a matter of public concern is a question of law to be determined by the court based on the content, form, and context of a given statement as revealed by the whole

record. *Coughlin,* 946 F.2d at 1156 n. 3; *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

declared by the school board. Plaintiffs have not presented any summary judgment evidence that even suggests that this reason was pretextual.

In support of their argument that the elimination of their supervisory positions and their reassignments were in retaliation for exercising their rights to free speech plaintiffs submit only their own affidavits in which they each state that over the course of years they had spoken out against HISD's failure to raise their wages, HISD's misapplication of public funds, and HISD's misdiagnosis of students. Plaintiffs state that they began expressing their concerns before January of 1989, and that between the fall of 1989 and August of 1991, they noticed the absence of the expected pay raise in their paychecks and they expressed their concern about its absence to their immediate supervisor, Dr. Frumess. Each affidavit states "[t]hen, quite suddenly, ... I was informed in a memo ... that my position as an Instructional Supervisor was officially eliminated along with others." [23] Anderson, Dickey, and Powell merely state that they began speaking out before January of 1989,[24] while Robinson states that she began speaking out even before becoming an instructional supervisor in 1986,[25] and Johnson states that he had been speaking out since 1974! [26]

Thus, according to plaintiffs' own affidavits, the reassignments that they allege were executed in retaliation for their speech did not occur for three, four, or in Johnson's case, 17 years after the alleged speech took place. Although the Fifth Circuit has stated that the lapse of time between protected conduct and an allegedly retaliatory employment action is not conclusive of the causation issue in a retaliation case it is one of the elements to be considered. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir.1992). In this case temporal proximity is the only evidence of retaliation presented by the plaintiffs. Without more, and on this record, the court concludes that plaintiffs' assertions

that they spoke out against HISD policies three, four, and 17 years before the adverse employment action occurred are not sufficient evidence for a reasonable jury to conclude that HISD's stated reason for plaintiffs' reassignments was pretextual and that HISD's true reason was retaliation for plaintiffs' exercise of their First Amendment rights. Consequently, HISD is entitled to summary judgment on plaintiffs' First Amendment claims.

### b. Fourteenth Amendment

Plaintiffs also allege that they were reassigned from their positions as instructional supervisors in violation of their rights to due process and equal protection as guaranteed by the Fourteenth Amendment.

#### i. *Due Process Clause*

■■■■ The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. In § 1983 actions asserting violations of the right to due process plaintiffs must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that caused the deprivation of that interest. *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir.1995) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 568–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). Absent a protected life, liberty, or property interest no right to due process exists. *Moore v. Mississippi Valley State University*, 871 F.2d 545, 548 (5th Cir. 1989). Read liberally plaintiffs complaint asserts claims for the deprivation of liberty and property interests.

■■■■ Section 1983 actions may be brought for violation of either procedural or substantive due process. In procedural due process claims the deprivation of a constitutionally protected life, liberty, or property interest is unconstitutional only if the deprivation is without due process of law. *Ziner-*

---

**23.** See Exhibits 1–5 attached to Docket Entry No. 25.

**24.** See Exhibits 1, 3, and 4 attached to Docket Entry No. 25.

**25.** See Exhibit 2 attached to Docket Entry No. 25.

**26.** See Exhibit 5 attached to Docket Entry No. 25.

*mon v. Burch,* 494 U.S. 113, 124–26, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Thus, in claims brought for the violation of procedural due process courts must determine whether a constitutionally protected interest exists, what process was due before that interest could be deprived, and whether the process due was accorded. *Davis v. Mann,* 882 F.2d 967, 973 n. 16 (5th Cir.1989). The substantive component of the Due Process Clause bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Zinermon,* 494 U.S. at 125, 110 S.Ct. at 983 (citing *Daniels v. Williams,* 474 U.S. at 331, 106 S.Ct. at 664 (1986)). In these claims courts must determine whether the deprivation of a life, liberty, or property interest is arbitrary or not reasonably related to a legitimate governmental interest. *Brennan v. Stewart,* 834 F.2d 1248, 1256 (5th Cir.1986).

### (a) Liberty Interest

 In their Original Complaint plaintiffs assert the deprivation of a liberty interest inherent in their jobs as supervisors; in their opposition to defendants' motion for summary judgment they assert the deprivation of a liberty interest to be free from retaliation for exercising their freedom of speech. HISD argues that it is entitled to summary judgment on these claims because plaintiffs have no liberty interest in their jobs as supervisors and because their claim for deprivation of a liberty interest in exercising their rights to free speech duplicates their First Amendment claim. Assuming without deciding that plaintiffs possess a liberty interest to be free from retaliation for exercising their freedom of speech, the court concludes that HISD is entitled to summary judgment for the reasons stated above with respect to plaintiffs' First Amendment claim. *See Rolf v. City of San Antonio,* 77 F.3d 823, 828 (5th Cir.1996) (recognizing a clearly established liberty interest in speech).

 Alternatively, the court concludes that HISD is entitled to summary judgment on plaintiffs' claim for deprivation of a liberty interest related to their employment as supervisors because they have failed to allege or submit summary judgment evidence establishing the elements for such a claim. A public employer unconstitutionally deprives its employee of a liberty interest if it subjects him to an adverse employment action under stigmatizing circumstances without giving the employee an opportunity to clear his name. *Arrington v. County of Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992). To support a claim for deprivation of the right to a name-clearing hearing plaintiffs must establish that they were public employees, that they were subjected to an adverse employment action, that stigmatizing charges were made against them in connection with the adverse employment action, that the charges were made public, that the charges were false, that they requested name-clearing hearings, and that the hearings were denied. *Id.* The public charges must be so stigmatizing that they create a "badge of infamy" that destroys plaintiffs' ability to obtain other employment. *Evans v. City of Dallas,* 861 F.2d 846, 851 (5th Cir.1988).

Plaintiffs have failed either to allege or to produce summary judgment evidence that stigmatizing charges were made against them, that any charges were made public, that they requested name-clearing hearings, that requested hearings were denied, or that any charges made against them have damaged or destroyed other employment opportunities. Plaintiffs have thus failed to raise a genuine issue of material fact concerning either the existence or the violation of a liberty interest protected by the Fourteenth Amendment. *Arrington,* 970 F.2d at 1447; *Evans,* 861 F.2d at 851. Accordingly, defendant is entitled to summary judgment on plaintiffs' claims for violation of their rights to due process arising from a protected liberty interest.

### (b) Property Interest

 Plaintiffs assert the deprivation of a property interest in their job assignments as supervisors and in their rights to be reassigned at the same level of pay. HISD argues that it is entitled to summary judgment on these claims because plaintiffs have no protectable property interest in continued employment as supervisors or in reassignment at the same level of pay. Because the

Fifth Circuit has repeatedly held that employees have no protectable property interests in non-economic benefits such as work assignments, HISD is entitled to summary judgment on plaintiffs' claims that they were deprived of their right to be supervisors without due process. *Kinsey*, 950 F.2d at 997 (no constitutionally protected property interest in noneconomic benefit of serving as superintendent); *Davis*, 882 F.2d at 973 n. 16 (unless the state specifically creates a property interest in a noneconomic benefit—such as a work assignment—a property interest in employment generally does not create a due process property protection for such benefits).

■ To prevail on their claim for reassignment without due process of law plaintiffs must show that they had a cognizable property interest in reassignment at the same level of pay and that the process afforded them was insufficient to protect that interest. *Garcia v. Reeves County, Tex.*, 32 F.3d 200, 203 (5th Cir.1994) (citing *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Assuming without deciding that plaintiffs possessed a property interest in being reassigned at the same level of pay the court concludes (1) that HISD is entitled to summary judgment on any claim that plaintiffs are attempting to assert for violation of their rights to procedural due process because plaintiffs received all the process due and (2) that HISD is entitled to summary judgment on any claim that plaintiffs are attempting to assert for violation of their rights to substantive due process because plaintiffs make no showing that HISD's decision to eliminate their positions and to reassign them to classroom teaching positions was arbitrary or not reasonably related to a legitimate governmental interest.

■ The root requirement of procedural due process is that an individual be given notice and an opportunity to be heard before he or she is deprived of a property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 & 544–46, 105 S.Ct. 1487, 1493 & 1495, 84 L.Ed.2d 494 (1985). The Hicks affidavit establishes that plaintiffs were notified of the proposed elimination of their positions as special education instruc-

tional supervisors and of their proposed reassignments before the Board's adoption of the RIF program. The notice was delivered by means of personal conferences. No supervisors suffered a loss in pay or benefits for the 1991–1992 school year as a result of the reassignment, and no supervisors were terminated as a result of the RIF. With the exception of Powell, plaintiffs all requested grievance hearings concerning their reassignments. Three levels of hearings were conducted at which the plaintiffs were able to present evidence and to testify. The court concludes that these procedures were sufficient to protect plaintiffs' property interest in continued employment at the same level of pay. *See Swanson v. Houston Independent School Dist.*, 800 S.W.2d 630, 633 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

■ The substantive component of the Due Process Clause bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Zinermon*, 494 U.S. at 124–26, 110 S.Ct. at 983 (quoting *Daniels*, 474 U.S. at 331, 106 S.Ct. at 664)). To establish a substantive due process claim plaintiffs must show that HISD's deprivation of their protected property interest was arbitrary or not reasonably related to a legitimate governmental interest. *Brennan*, 834 F.2d at 1257 (violation of "substantive" due process ... occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government "works a deprivation" of a "constitutionally protected interest"). *See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 223 n. 4, 106 S.Ct. 507, 512 & n. 8, 88 L.Ed.2d 523 (assuming *arguendo* that plaintiff had a protected property interest before considering "substantive" due process claim). In reviewing academic decisions courts must determine whether the governmental action was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225, 106 S.Ct. at 513. To survive HISD's motion for summary judgment on this issue plaintiffs must present

evidence from which a reasonable jury could conclude that there was no rational academic basis for the decisions to eliminate their supervisory positions and to reassign them to classroom teaching positions at a reduced pay grade for the years following that in which the reassignment was made.

The summary judgment evidence establishes that the decision to eliminate plaintiffs' supervisory positions stemmed from the need to address a financial emergency requiring a $20,000,000 reduction in the district's budget, and that as a result of the financial emergency the district implemented a RIF. Plaintiffs present no summary judgment evidence that the district did not face a financial emergency or that the decision to alleviate that emergency through a RIF was arbitrary, or not reasonably related to a legitimate governmental interest. Nor do plaintiffs present any summary judgment evidence that HISD's decision to compensate them at the rate paid to supervisors for the 1991–1992 school year but to compensate them at the rates commensurate with their new positions for subsequent years was arbitrary or not reasonably related to a legitimate governmental interest. The court therefore concludes that HISD is entitled to summary judgment on any claim that plaintiffs are attempting to assert for violation of their rights to substantive due process stemming from their reassignments to classroom teaching positions. *See Roberts v. Houston Independent School Dist.,* 788 S.W.2d 107 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

### ii. *Equal Protection Clause*

■ The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. To establish a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment plaintiffs must show that HISD treated them differently than similarly situated HISD employees. *Rolf,* 77 F.3d at 828 (*citing City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). HISD argues that it is entitled to summary judgment on plaintiffs' equal protection claim because plaintiffs have failed to present summary judgment evidence from which a reasonable jury could conclude that HISD treated them differently than other similarly situated employees. Plaintiffs argue that HISD violated their right to equal protection by reassigning them to lower-paying positions because they are African–American and because, due to a shift in regional demography, HISD no longer needed African–American administrators. Because plaintiffs present no summary judgment evidence to support this argument, HISD is entitled to summary judgment on plaintiffs' Fourteenth Amendment Equal Protection claim.

### D. Claims Asserted Against HISD Pursuant to Texas Law

■ Plaintiffs argue that they have raised valid claims under the Texas Constitution Article I, Section 8 for deprivation of protected liberty and property interests. In support of these claims plaintiffs present their own affidavits in which they assert that they lost their jobs as Special Education Instructional Supervisors and should have been reassigned as one of the 27 Special Education Coordinators, but were instead reassigned as classroom teachers. Citing *City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex.1995), plaintiffs argue that if nothing else, the Texas Constitution entitles them to an equitable remedy. In *Bouillion* the Texas Supreme Court held that there is no implied right of action for damages arising under the free speech and free assembly sections of the Texas Constitution. *Id.* at 147. Although the *Bouillion* Court stated in *dicta* that "suits for equitable remedies are not prohibited," it did not address whether an implied right of action for equitable relief applicable to plaintiffs' claims exists under the free speech and free assembly sections of the Texas Constitution. *Id.* at 149. Nevertheless, assuming that plaintiffs possess an implied right of action for equitable relief under the Texas Constitution, the court concludes that HISD is entitled to summary judgment on this claim for the same reasons that the court has determined that HISD is entitled to summary judgment on plaintiffs' First Amendment claims.

## III. *Order*

Defendants' Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED.**