**K.U., a minor By and Through his Father as Next Friend, MICHAEL U.**

**·v.·**

**ALVIN INDEPENDENT SCHOOL DISTRICT and Virgil Tiemann.**

**No. Civ.A. G–97–056.**

United States District Court, S.D. Texas, Galveston Division.

Jan. 6, 1998.

Laurence Wade Watts, Watts and Associates, Lawrence Bradley Hancock, Shannon, Martin, Finkelstein and Sayre, Houston, TX, for Plaintiff.

Jeffrey L. Rogers, David M. Feldman, Myra C. Schexnayder, Feldman and Rogers, Houston, TX, for Defendants.

## ORDER

KENT, District Judge.

This case was removed to this Court on January 29, 1997 from the 149th Judicial District Court of Brazoria County, Texas. Plaintiff alleges claims of, *inter alia,* retaliation, discrimination, and violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("section 504"), requesting injunctive and other declaratory relief. Now before the Court is Defendants' Motion to Dismiss and/or for Summary Judgment, filed December 1, 1997. For the reasons stated below, the Motion to Dismiss is **GRANTED.**

## I. FACTUAL BACKGROUND

The facts of this case, as tediously and painstakingly recited in Plaintiff's Second Amended Complaint, are voluminous. The fact section alone comprises 45 pages of the Second Amended Complaint. Consequently, the Court declines to comprehensively recite the facts. A brief summary will suffice. Plaintiff K.U. is a fourteen year old student in the tenth grade at Alvin High School, in the Alvin Independent School District ("AISD"). K.U. sustained a traumatic brain injury in June of 1991 which has caused him to suffer from "frontal lobe syndrome." Plaintiff alleges that the teachers and administrators of K.U.'s school have failed to adequately meet his individual educational needs resulting from his disability. Plaintiff also alleges that Defendants have retaliated against K.U. for the outspoken conduct of K.U.'s parents. In Plaintiff's words, "Mr. and Mrs. U. perceived that the [school] personnel were circling one fraternal/sororal wagons [sic] against the U. family." K.U. alleges that he was prevented the opportunity to participate in school-related activities, such as basketball and journalism, and excluded from certain classes, all because he was a member of the U. family. Plaintiff also complains about AISD's attempt to classify K.U. as in need of "special education," alleging that it is "stigmatizing and negatively affect [sic] academic records."

The incidents which constitute the basis of Plaintiff's claims include allegations such as: K.U.'s band director implied that he was "drain bamaged"; his English teacher failed to assist him in his studies; he was removed from some of his classes because of poor performance; he was removed from the basketball team when others were allowed to remain; K.U.'s teachers are not properly trained in the area of his disability; Defendants did not use the best available training facilitator; certain teachers did not follow K.U.'s approved section 504 plan; and that K.U. has been stigmatized as "special." [1]

---

1. This represents but a small sampling of the allegations contained in the Second Amended Complaint. The complaints date back to events that occurred in 1991, prior to K.U.'s fourth grade year. Several, if not most, of the factual allegations have no apparent legal significance. For example, paragraph 48 states "[t]he computer literacy teacher, Ms. Hairston, had a very negative attitude towards K. and the U.'s. She did not inform the U.'s when there were problems concerning K. in her class." As further elaborated in the "Analysis" portion of this Order, the Court refuses to micromanage the complex psychological relationships between student and teacher, or teacher and parents. Also, for reasons unbeknownst to the Court, Plaintiff has

Despite his frontal lobe syndrome, the record reveals that K.U. has continued to make passing grades since his accident. He passed the Texas Assessment of Academic Skills ("TAAS") test in the spring of 1996, and has been provided with a written 504 accommodation plan since 1995. Although Dr. Jack Fletcher, a physician hired by K.U.'s parents themselves, recommended in January of 1995 that K.U. be evaluated for special education programs, K.U.'s parents successfully resisted such efforts. Due to his parents' refusal to allow him to be evaluated for special education, the special education hearing officer denied AISD's request to evaluate K.U. The officer found that K.U. was achieving reasonable educational progress in the regular education environment.

On August 27, 1997, pursuant to a request by K.U.'s parents, a hearing was held under section 504 of the Rehabilitation Act of 1973. At the hearing, the section 504 Hearing Officer found that "AISD personnel have exercised good faith in the implementation of [K.U.]'s Section 504 program," that AISD "provided reasonable accommodations for the Petitioner in accordance with Section 504 which allowed [K.U.] to receive a free, appropriate public education under the Act," and that Plaintiff failed to meet his burden to show that AISD acted with intent to discriminate or used gross misjudgment in the development and implementation of the section 504 program. The Hearing Officer denied all relief requested by Plaintiff.

## II. PROCEDURAL HISTORY

Plaintiff initially filed this action on January 28, 1997 in the 149th Judicial District Court of Brazoria County. Defendants removed to this Court on January 29, 1997. Proceedings were stayed in this Court pending the outcome of the section 504 Hearing, which occurred on August 27, 1997. On September 11, 1997 the section 504 Hearing Officer issued a finding that AISD did not violate K.U.'s rights under section 504.

included several factual paragraphs relating to the treatment of K.U.'s brother, J.U. As J.U. is not a party to this proceeding, and Plaintiff demonstrates no nexus connecting those events to the causes of action alleged, these paragraphs appear to be nothing more than surplusage.

The Court held a status conference on October 3, 1997, ordering Plaintiff to file an Amended Complaint setting forth with specificity the precise nature of the claims being made in this suit. Plaintiff filed a Second Amended Complaint on November 7, 1997, which is 49 pages long and includes 43 pages of factual allegations. The claims portion, however, is largely incomprehensible. Upon recognizing that Plaintiff's Second Amended Complaint failed to adequately state Plaintiff's claims with specificity, as Ordered by the Court in the status conference, the Court then Ordered the parties to file any dispositive motions they deemed appropriate. In response, Defendants filed the present Motion to Dismiss and/or for Summary Judgment. Plaintiff, without leave, filed his Third Amended Complaint on December 1. On December 12, the Court Denied Plaintiff's request for leave to file his Third Amended Complaint, and Ordered it stricken from the record. Accordingly, in the consideration of this Motion to Dismiss/for Summary Judgment, the Court will consider only Plaintiff's Second Amended Complaint.[2]

## III. ANALYSIS

When considering a Motion to Dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir .1994).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56.

2. Because Plaintiff's Third Amended Complaint was filed on the same day as Defendants' Motion, the Motion is based solely on the allegations in the Second Amended Complaint.

Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In order to properly analyze Plaintiff's claims, the Court has the unenviable job of ferreting out Plaintiff's causes of action from the Second Amended Complaint. Two causes of action appear in the claims portion of the Second Amended Complaint. First, Plaintiff claims retaliation against K.U. due to the whistleblowing actions of his parents, and second, Plaintiff claims a violation of due process of law based on an alleged deprivation of his right to a fair, appropriate public education and the right to be free from punishment or denial of public school services because of the conduct of his parents. In the relief portion of the Second Amended Complaint's "Claims and Relief" section, Plaintiff requests, *inter alia*, a declaration that he was denied equal protection of the law, and that he was denied rights and privileges under section 504. Thus it appears that Plaintiff has alleged causes of action based on due process, equal protection,[3] retaliation and

discrimination in violation of section 504, and First Amendment violations.[4]

### A. Section 504 Claims

Section 504 of the Rehabilitation Act of 1973 provides that:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Section 504 compels a school receiving federal financial assistance to provide a "free appropriate public education" to handicapped students within its jurisdiction. 34 C.F.R. § 104.33. "Appropriate education" is defined in the regulations as:

> the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [other federal regulations pertaining to section 504 requirements for public education].

34 C.F.R. § 104.33(b). Section 504 provides relief from discrimination on the basis of disability.

To successfully prove a claim under section 504, "a plaintiff must demonstrate not only that there was a failure to provide an appropriate education, he or she must also demonstrate bad faith or gross misjudgment."[5] *Monahan v. State of Nebraska*, 687 F.2d 1164, 1170–71 (8th Cir.1982); *see also Heidemann v. Rother*, 84 F.3d 1021, 1032 (8th Cir.1996); *Brantley By and Through Brantley v. Independent Sch. Dist. No. 625*,

---

3. Plaintiff's equal protection and due process claims are asserted under the Texas Constitution, Article I, §§ 3, 19 and the United States Constitution, Fourteenth Amendment.

4. The First Amendment violations appear from the alleged actions against K.U. in retaliation for his parents' "constitutionally protected" conduct.

5. Although the Fifth Circuit has not yet addressed whether bad faith or gross misjudgment

is required to recover under section 504 for discrimination, it is clear that intentional discrimination is required. *See Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1357 (5th Cir. 1983). This Court agrees with *Monahan* that section 504 did not create "general tort liability for educational malpractice." *Monahan*, 687 F.2d at 1170–71.

*St. Paul Pub. Sch.*, 936 F.Supp. 649, 657 (D.Minn.1996); *Johnston by Johnston v. Ann Arbor Pub. Schools*, 569 F.Supp. 1502, 1506 (E.D.Mich.1983) The line of cases following *Monahan* hold that as long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, there can be no liability under section 504. *See Heidemann*, 84 F.3d at 1032. Courts are not competent to substitute their own judgment for that of professionals who are trained to educate handicapped students, and therefore can only ensure that the decisions made were not grossly errant.

■ In this case, Plaintiff has failed to properly allege any of the facts necessary to recover under section 504. First, and most critically, Plaintiff's allegations of discrimination are based mainly on the perception that K.U. suffered retaliation due to the actions of his parents. Such allegations fail to show that he was discriminated against based on his *handicap*, as required for relief under section 504. The only apparent allegation of discrimination based on K.U.'s handicap is that K.U.'s band teacher, after making a conducting mistake, apologized by stating that he must be "drain bamaged." This allegation is insufficient to create an inference that the teacher was referring to K.U., and clearly insufficient to constitute evidence of any discrimination based on disability.

Plaintiff has also failed to show that he was denied a free appropriate public education. In fact, nowhere has Plaintiff alleged that AISD failed to follow any procedure required under section 504. Plaintiff complains that disciplinary actions were taken against him, including several suspensions that were imposed without a section 504 Committee meeting. None of the suspensions lasted longer than three days. As stated by the section 504 Hearing Officer, "the law is abundantly clear that suspensions of ten days or less do not constitute a significant change in placement triggering the need for a manifestation determination by the Section 504 Committee before taking disciplinary actions against a student with a disability." *See Honig v. Doe*,

484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Plaintiff also recounts instances where K.U. received poor grades in certain classes to show that he was discriminated against. For instance, paragraph 78 of the Second Amended Complaint reports, in laborious detail, the circumstances surrounding an incident where K.U. misunderstood an assignment that he was given, and consequently failed to turn it in on time, resulting in a failing grade. The allegation seems to be that the teacher did not follow Mrs. U.'s suggestion as to the proper manner of explaining assignments to her child, which resulted in the misunderstanding and failure to complete the assignment. In another example, K.U. alleges that he was unfairly treated after being transferred to an art class from band class because the principal opted to average the art grade with the lower band grade. In none of the cases where K.U. received a low grade does he assert that the grade was based on a discriminatory motive rather than merit. The Court agrees with Defendants that the purpose of judicial review is not to reweigh or reevaluate a particular student's grades. On the contrary, for purposes of section 504, the Court must only ensure that the grade was given on a nondiscriminatory basis. Plaintiff's allegations do not show that he received low grades because his teachers discriminated against him. In fact, the crux of Plaintiff's complaints is that he was retaliated against for his parents' conduct, not for his disability. Because Plaintiff has failed to show any violations of section 504, no cause of action is presented by his low grades.

■ In his Response to the Motion to Dismiss and/or for Summary Judgment, Plaintiff attempts to show bad faith and gross misjudgment by stating that the section 504 plan approved for K.U.'s education was based on a misunderstanding of Plaintiff's condition. Whether the section 504 plan precisely reflected the parents' desires, based on their own understanding, for K.U.'s education is not relevant in the Court's determination. What is relevant is that AISD implemented a section 504 plan which was, in AISD's judgment, appropriately fashioned to

K.U.'s needs. *See Monahan,* 687 F.2d at 1170 ("The reference in the Rehabilitation Act to 'discrimination' must require ... something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist.") Plaintiff does not point to any specific deficiencies with the plan, other than it was not perfectly in accordance with the wishes of K.U.'s parents. However, perfect accordance with parents' wishes is not a requirement of section 504. *See generally* 34 C.F.R. §§ 104.34–104.37. Moreover, it appears that an acceptable plan was later developed, but the acceptable plan either was not distributed properly, or allegedly was not satisfactorily followed by the individual teachers. Plaintiff's allegations, however, show no more than mere negligence, and are not actionable under section 504.

■ Plaintiff also alleges that the District excluded K.U.'s parents and counsel from attending a section 504 committee meeting on January 7, 1997. The actual complaint seems to be that, although K.U.'s parents received notification of the meeting, they were not given the option to reschedule the meeting so that their attorney could attend. Clearly, section 504 does not require that parents be given the power to reschedule committee meetings because the scheduled time is inconvenient for their lawyer. Section 504 does not even require that parents be given the opportunity to attend committee meetings.[6] *Id.* To attempt to assert a cause of action on such a ludicrous and thoroughly unjustified basis is utterly frivolous. Unfortunately, most of Plaintiff's other attempts can be classified in the same category.

■ Finally, Plaintiff points to AISD's failure to use "the individual most qualified to facilitate Plaintiff's accommodations" as a training facilitator for K.U. as evidence of the District's obvious gross bad faith and misjudgment. Once again, section 504 does not require that a school district use the individual chosen by a student's parents to be their child's training facilitator, or even that the school use the objectively most suitable person for that role. The school district is at liberty to make its own choice as to how the student is facilitated and who facilitates him, and its objectively reasonable choice will not be second-guessed by a court. Plaintiff's attempts to illuminate gross bad faith and misjudgment on the part of Defendants fail.

Taken as a whole, the allegations against the Defendants show, at the very most, negligence on the part of certain AISD officials in implementing K.U.'s 504 plan. None of the Plaintiff's factual allegations rise to the level of gross misjudgment or bad faith. Moreover, Plaintiff have utterly failed to show that his education has been damaged by any of Defendants' actions. At most, K.U.'s damage amounts to being upset because he felt like he was stigmatized as "special" and treated poorly in retaliation for his parents' actions. K.U. has continued to make passing grades, both before and after his accident, and before and after the implementation of the section 504 plan.

In summary, the voluminous facts presented in Plaintiff's Second Amended Complaint, which present in hideous detail minute infractions perceived by K.U.'s parents as retaliation and discrimination against their son, amount to the sum that K.U.'s parents are apparently unsatisfied with their son's educational process and upset that their specific recommendations have not been followed by AISD teachers. However, the complaints regarding satisfaction with the particulars of K.U.'s educational experience are not the concern of this Court. It is not the job of the federal court system to exhaustively police the complex interactions between teacher and student and assure that each child in the dozens of school districts in the Division over which this Court presides is educated in a manner consistent with his parents' wishes. Such a duty would clearly place an impossible burden on the federal court system. The

---

**6.** 34 C.F.R. § 104.36 does require that an impartial hearing be held with opportunity for participation by the child's parents, but such a requirement does not exist for all section 504 meetings. Even this provision does not require that parents or guardians be given the power to reschedule.

This provision was complied with, as a section 504 hearing was held on August 27, 1997. As recited in the Factual Background section, the Hearing Officer found that AISD had committed no violations of section 504.

Court's role is merely to assure that the school district is providing each student with an educational process that is adapted to that child's needs. Beyond this, the Court must not venture. To question each academic and extracurricular decision affecting a disabled child would open a Pandora's box of incredibly complex and subjective inquiries which would overload the courts with litigation. Such inquiries are not required and will not be undertaken, especially where, as here, the perceived infractions are so minor as to be insignificant. Plaintiff has shown no cognizable cause of action for discrimination or retaliation based on disability under section 504. Accordingly, Defendants' Motion to Dismiss Plaintiff's section 504 claims is **GRANTED**, and each and all of such claims are **DISMISSED WITH PREJUDICE.**

### B. Due Process Claims

Plaintiff brings constitutional claims under both the Texas Constitution and the United States Constitution. Insofar as Plaintiff seeks monetary damages for violations of the Texas Constitution, the Texas Supreme Court has confirmed that the Texas Constitution does not allow damages for violations of its provisions. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex.1995) Plaintiff may, however, seek equitable relief under the Texas Constitution.

Provisions of the Texas Constitution are interpreted consistently with analogous provisions of the U.S. Constitution. *See Aitch v. State*, 879 S.W.2d 167, 172 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (holding that Art. I, § 9 of the Texas Constitution should be interpreted consistently with the Fourth Amendment of the U.S. Constitution).[7] A plaintiff may not bring a cause of action directly under the U.S. Constitution, but instead must bring an action under one of the implementing statutes. *See Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992). Although Plaintiff has not pled his claims under any implementing statute, his claims of due process and equal

protection violations are actionable under 42 U.S.C. § 1983 ("section 1983").

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV. To state a claim under section 1983 for a violation of due process, Plaintiff must first prove that he was deprived of a constitutionally protected life, liberty, or property interest, and then identify an official action that caused the constitutional deprivation. *Johnson v. Houston Indep. Sch. Dist.*, 930 F.Supp. 276, 285 (S.D.Tex.1996) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir.1995)). Plaintiff asserts that Defendants deprived him of his property interest in an "adequate and free public education."

 With respect to public education, citizens possess a property interest not in the particulars of the educational experience, but rather in participation in the educational process as a whole. "The myriad of [educational] activities cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution." *Dallam v. Cumberland Valley Sch. Dist.*, 391 F.Supp. 358, 361 (M.D.Pa.1975). As discussed previously, Plaintiff's allegations fall well short of showing that he was denied a "free appropriate public education" under section 504, much less that he was denied his property interest in the educational process.

 Liberty interests are also asserted by Plaintiff as a basis for due process. First, Plaintiff asserts that Defendant's actions, which stigmatized him as "drain bamaged," violated a protected liberty interest. Plaintiff does not cite to any authority which would establish a liberty interest in being free from stigmas, and in fact, none exists. *See Silva v. Worden*, 130 F.3d 26, 1997 WL 713952 at *6 (1st Cir.1997) ("Despite the 'drastic effect of the 'stigma' ... reputation alone, apart from some more tangible interests ..., is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural

---

7. Texas's guarantee of equal protection is in TEX. CONST. art. I, 3, while its guarantee of due process is in TEX. CONST. art. I, § 19.

protection of the Due Process Clause.' ") (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976)). Next, Plaintiff asserts a protected liberty interest "to be free from retaliation for his parents' persistence in demanding that all AISD children be provided an appropriate education." Once again, Plaintiff cites to no authority establishing such a liberty interest. Plaintiff's interest in being free from retaliation exists, if at all, in section 504, or under the First Amendment, discussed *infra.* Plaintiff's section 504 retaliation claim has been dismissed, *supra.* Plaintiff has failed to show the violation of a protected liberty interest. Therefore, Plaintiff's complaints that he was denied "due process hearings" fail to state a legally cognizable ground for recovery, as he has suffered no deprivation of a property or liberty interest. Accordingly, Defendants' Motion to Dismiss Plaintiff's due process claims is **GRANTED**, and each and all of those claims are **DISMISSED WITH PREJUDICE.**

## C. *Equal Protection Claims*

■ The Equal Protection Clause requires similar treatment of all persons similarly situated. U.S. CONST. amend. XIV; *see City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (Equal Protection Clause commands like treatment of those similarly situated); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Furthermore, it is well-established that a party who wishes to make out an equal protection claim must prove the existence of purposeful discrimination motivating the alleged state action. *See Washington v. Davis,* 426 U.S. 229, 246–50, 96 S.Ct. 2040, 2051–52, 48 L.Ed.2d 597 (1976) ("The requirement of purposeful discrimination is a common thread running through [equal protection] cases...."); *Vera v. Tue,* 73 F.3d 604, 609–10 (Equal Protection Clause is violated only by intentional discrimination).

In the present case, Plaintiff's equal protection claim is insupportable as a matter of law. First, Plaintiff has failed to establish treatment dissimilar from that of others similarly situated. In fact, despite the volumes of factual allegations, *no* facts appear to establish how other similarly situated students were treated. Next, as stated previously in the discussion of Plaintiff's section 504 discrimination claims, Plaintiff has failed to allege facts sufficient to show purposeful discrimination which motivated any disparate treatment. There are simply *no* facts alleged which rise to the level of actionable equal protection violations. Accordingly, Defendants' Motion to Dismiss Plaintiff's equal protection claims is **GRANTED**, and each and all of those claims are **DISMISSED WITH PREJUDICE.**

## D. *First Amendment Claims*

■ Reading Plaintiff's Second Amended Complaint generously, there appears a cause of action under the First Amendment for retaliation against K.U. because of the exercise of First Amendment rights by his parents. In fact, several of the factual paragraphs in the Second Amended Complaint detail the perceived injustices suffered by K.U. because Mrs. U. was allegedly labeled by some within AISD as a "whistleblower." Accordingly, Plaintiff asserts his "right to be free from/punishment or denial of public school services, because of the conduct of his parents, especially when that conduct is constitutionally protected." However, a section 1983 claim for violation of civil rights cannot be predicated on the violation of another person's protected rights. *Penney v. Town of Middleton,* 888 F.Supp. 332, 338 (D.N.H. 1994) (citing *Dohaish v. Tooley,* 670 F.2d 934, 936–37 (10th Cir.1982) and *Casanas v. De Leon,* 633 F.Supp. 22, 23–24 (D.P.R.1986)). Because K.U. does not contend that his own First Amendment rights were chilled by any of the alleged actions of Defendants, any First Amendment claims on this basis must be dismissed. Accordingly, Defendants' Motion to Dismiss Plaintiff's claims under the First Amendment is **GRANTED**, and each and all of such claims are **DISMISSED WITH PREJUDICE.**

## E. *Claims Against Individual Defendant Tiemann*

■ Defendant Virgil Tiemann is the Superintendent of AISD and has been sued

individually and in his official capacity. Although Tiemann has been sued in his individual capacity, the Court can find not one single instance where he is mentioned in the Second Amended Complaint's comprehensive citation of the facts. Furthermore, the Court can find not one single factual allegation which relates to anything other than K.U.'s educational experience. Therefore, Plaintiff has completely failed to allege any facts which would state a claim against Tiemann in his personal capacity, and Plaintiff's assertion thereof is patently frivolous.

Plaintiff's claims against Tiemann individually fail procedurally as well as substantively. Even if the facts were sufficient to make out a claim against Tiemann, he is protected from Plaintiff's state law claims by official immunity, as any potential claims would necessarily arise against him out of his performance of a discretionary duty while acting within the scope of his authority, and no bad faith is alleged against Tiemann. *See Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir.1996). Tiemann is also immunized from personal liability with respect to Plaintiff's federal section 1983 claims by the doctrine of qualified immunity. Qualified immunity protects government officials from liability for conduct in the course of their official duties unless the alleged conduct violated clearly established law of which a reasonable public official would have been aware. *Gunaca v. State of Texas*, 65 F.3d 467, 473 (5th Cir.1995). This protection extends to superintendents of public school districts, as state officials. As discussed previously, Plaintiff has failed to establish the violation of a clearly established right. Therefore, Tiemann is entitled to qualified immunity in his individual capacity for claims under section 1983. Accordingly, Defendants' Motion to Dismiss the claims against Tiemann in his individual capacity is **GRANTED**, and each and all of those claims are emphatically **DISMISSED WITH PREJUDICE.**

Next, Plaintiff's claims against Tiemann in his official capacity must be dismissed as well. Suits against public officials are equivalent to suits against the governmental entity itself. A suit against Tiemann in his official capacity is, in reality, a suit against AISD. Because local government units can be sued directly under section 1983, see *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), there is no longer a need to sue an individual in his official capacity.[8] Accordingly, Defendants' Motion to Dismiss Plaintiff's claims against Defendant Tiemann in his official capacity is **GRANTED**, and each and all of such claims are **DISMISSED WITH PREJUDICE.**

### F. *Defendants' Counterclaim*

██ Defendants have brought a counterclaim, seeking costs and reasonable attorney's fees pursuant to TEX.EDUC.CODE §§ 11.161, 22.055 and 42 U.S.C. § 1988, contending that Plaintiff's suit is "frivolous, unreasonable, and without foundation." Although the Court has dismissed all of Plaintiff's claims as lacking factual and legal justification, the Court also appreciates that no matter how unreasonable Plaintiff's demands, they were motivated by a laudable affection between parent and child, and by the parents' active interest in the education of their child. While the perceived injustices may not be legally reprisable, K.U.'s parents should not be punished for their zealous representation of their child's interests.[9] Accordingly, Defendants' Motion for Summary Judgment on their counterclaim is **DENIED**, and all parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

### IV. CONCLUSION

The Court sympathizes with the injury sustained by and the consequent educational plight of K.U., but the facts and claims alleged simply fail to state any cause of action upon which relief can be granted. The Court today holds that in public education, a child has a right to fair due process in compliance with the applicable state and federal regula-

---

8. Furthermore, because all claims against AISD have been dismissed, any claims against Tiemann in his official capacity must be dismissed as well on the same grounds.

9. If, after this Order, the parents of K.U. elect to persist in this matter, however, the Court reserves the right to revisit this issue.

tions, and a right that the school district does what it has been charged to do in order to provide a good education for all students, based on their needs. However, parents of children in public education are not entitled to determine who gets to teach their children, identify the particular training the teachers or students should receive, or make a determination as to what the child's education should include. Most importantly, parents absolutely cannot generally invoke constitutional liberty interests to reject the good faith efforts of a school district to fashion a fair remedy for those students requiring specialized training simply due to a fear that their child will be stigmatized as "special."

The unreasonable demands of K.U.'s parents in this case make it apparent that they will not consider any of the school district's efforts sufficient unless they have the sole, exclusive right to determine who teaches their child, what training the teachers must have, and exactly what treatment the student should receive, and have the power to dictate every other minute detail of the educational process. As aptly expressed by Plaintiff himself in final argument to the section 504 Hearing Officer, "[K.U.]'s problems are probably the product of adolescence, relative youth when compared to peers (because of advanced placement), and to some extent a mildly symptomatic frontal lobe syndrome occasioned by a head injury in 1991, [K.U.]'s reluctance to avail himself of services, and overly aggressive and protective parents."[10] If K.U.'s parents continue to feel so strongly about their child's education, they might want to consider home-schooling or paying for a private education for their son. In such a tailored environment, their demands may be met. However, it is unreasonable, impractical, and flatly not required by the law for the Alvin Independent School District to have to comply with the demands placed on it in this case.

Accordingly, for the reasons stated above, Defendants' Motion to Dismiss is hereby **GRANTED** as to all claims, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.** However, the Court does not find, for now, that Plaintiff's case is frivolous or brought in bad faith, and therefore **DENIES** Defendants' Motion for Summary Judgment on the counterclaim and **ORDERS** all parties to bear their own costs and attorney's fees incurred herein to date. The parties are **ORDERED** to file no further pleadings before this Court, particularly including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the submission of the instant pleadings. All further relief shall be sought in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, Defendants' Motion to Dismiss is **GRANTED**, and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.** Defendants' Motion for Summary Judgment on the counterclaim is **DENIED**, and all parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

---

**10.** As quoted by Defendants in their Motion to Dismiss and/or for Summary Judgment.