**UNITED STATES of America**
v.
**JULIUS DOOCHIN ENTERPRISES, INC.,
a corporation, and Julius Doochin, Individually, and as President-Treasurer
of Julius Doochin Enterprises, Inc.**
**Crim. No. 15373.**

United States District Court,
M. D. Tennessee,
Nashville Division.
Oct. 31, 1973.

Charles H. Anderson, U. S. Atty., and Ralph York, U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Thomas Wardlaw Steele, and Charles Hampton White, Nashville, Tenn., for defendants.

## ORDER

FRANK GRAY, Jr., Chief Judge.

On September 5, 1973, the United States filed with this court a "Petition for Prosecution for Civil and Criminal Contempt," alleging that the named respondents had violated the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and the Judgment of this court entered April 27, 1967, in another contempt proceeding involving the same parties, and further requesting that the respondents be directed to appear before this court and show cause why they should not be held guilty of civil and criminal contempt. Accordingly, the court issued an Order to Show Cause on September 11, 1973, ordering the respondents to appear on October 29, 1973.

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the respondents took the deposition of Paul W. Lindsey, Compliance Officer, Wage and Hour Division, United States Department of Labor, on October 19, 1973. At the taking, however, Mr. Lindsey, on advice of counsel, refused to answer certain questions propounded by counsel for the respondents. Thereupon, the respondents filed a motion seeking to compel those answers which had been refused. This cause is now before the court for a ruling on that motion.[1]

The record in this case discloses that the Government's petition was based upon the investigation and affidavit of Mr. Lindsey. The evidence thus far adduced, being the October 19th deposition, shows that Mr. Lindsey's conclusion that the respondents had violated the Fair Labor Standards Act and this court's Judgment was based upon his own examination of the respondents' payroll records and information he had obtained through interviews with nine past and present employees of the respondent, seven of whom gave written statements. The general thrust of the questions at issue was an attempt by the respondents to obtain the source and substance of the information relied upon by the Compliance Officer. Lindsey's refusal to answer those questions was grounded upon the Government's invoking the "informers privilege." The question before the court, therefore, is whether all or part of the matter sought by the respondents is covered by the informer's privilege, assuming the matter sought is within the purview of Rule 26 absent the privilege.[2]

The informer's privilege, or more precisely, the Government's privilege to withhold disclosure of the identity of persons who provide information to law enforcement officers concerning violations, is clearly established in our jurisprudence, and it has been invoked frequently in Fair Labor Standards Act cases. 8 A.L.R. Fed. 6, 16. The most authoritative and descriptive treatment of the informer's privilege in general is found in the case of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957), wherein the Supreme Court set forth the following principles concerning the privilege: The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement by preserving the anonymity of citizens who furnish information concerning the commission of

---

1. On the date set for trial, the court took the motion under advisement and continued the trial to October 31, 1973.

2. Inasmuch as this action combines both civil and criminal matters and both sides have obviously proceeded under the assumption that the civil rules apply at this juncture, the court will indulge the presumption that the civil rules are applicable here, there being no authority to the contrary found and no derogation, as yet, of the respondents' criminal procedural rights. This is not to say, however, that the civil rules would apply throughout if both civil and criminal contempt continue to be pursued together by the Government.

crimes; the scope of the privilege is limited by that underlying purpose; the contents of an informer's communication are not privileged where disclosure would not tend to reveal the informer's identity; once the identity of the informer has been revealed to those who would have cause to resent the communication, the privilege is no longer applicable; the concept of fundamental fairness imposes a further restriction on the applicability of the privilege to the extent that disclosure of the identity of the informer or the contents of his communication will be required if such would be relevant or helpful to the defense or essential to a fair determination of the case; and there is no fixed rule with respect to disclosure, the determination calling for balancing the public interest against the defendant's right to prepare a defense under the particular circumstances of each case. In Fair Labor Standards Act cases, the informer's privilege has been given great weight by virtue of the fact that enforcement is so dependent upon the cooperation of, and information from, employees, and there is, therefore, a concomitant need for protecting those employees from potential retribution from employers. *See*: Mitchell v. DeMario Jewelry, Inc., 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960).

The decisions dealing with the informer's privilege in Fair Labor Standards Act cases are numerous and, at first blush, do not appear to follow any logical pattern. For example, the names of informers [Wirtz v. Continental Finance & Loan Co. of West End, 326 F.2d 561 (5th Cir. 1964)], the names of those persons from whom statements have been taken [Mitchell v. Neylon, 27 F.R.D. 438 (D. of Neb.1960)], and the names of persons who filed complaints [Wirtz v. Continental Finance & Loan Co. of West End, *supra*], have been held to be covered by the privilege; but the names of those employees designated as underpaid have been held not to be covered by the privilege [Shultz v. Farino Excavating Co., Inc., 55 F.R.D. 346 (E.

D.Mich.1972)]. The privilege has been held to have protected the disclosure of the names of witnesses before the pretrial conference [Wirtz v. Continental Finance & Loan Co. of West End, *supra*], but not five to ten days in advance of trial [Wirtz v. Hooper-Holmes Bureau, Inc., 327 F.2d 939 (5th Cir. 1964)]. The names of persons who *gave* information concerning the violation are protected by the privilege [Shultz v. Farino Excavating Co., Inc., *supra*], but the names of those who *might have* information concerning the violations are not thusly protected [*Id.*]. And finally, the statements taken by agents and the names of those informers who gave statements are not discoverable because of the privilege [Wirtz v. McDade, 330 F.2d 610 (5th Cir. 1964); Wirtz v. Robinson & Stephens, Inc., 368 F.2d 114 (5th Cir. 1966)], but those whose identity has been disclosed to the employer by the informer or by the Government are not entitled to the benefit of the privilege [Mitchell v. Bass, 252 F.2d 513 (8th Cir. 1958)].

A closer examination of these decisions, however, reveals that they are all reconcilable with the dictates of *Roviaro*, primarily because of the express limitations therein as to waiver and the importance of protecting the informer's identity, together with a proper understanding of the general purpose of the privilege. Given these *Roviaro* principles and the cited decisions, it becomes clear that the essence of the protection is non-disclosure of the identity of an informer, not the contents of his communication. In Fair Labor Standards Act cases, the need to protect the identity of the informer is obvious by virtue of the Government's dependence on the employees for information and the power an employer holds over employees; and the decisions indicate the courts' zealous efforts to guard against disclosure of the employees' identity unless and until disclosure was absolutely necessary or had already been made. This, then, is the key to understanding the case law in this realm. Thus, where dis-

closure has already been divulged, where disclosure is inevitable because the informer is to be a witness at trial (but note that this apparently must be proximate in time to the trial), or where disclosure of a person's identity would not label him necessarily as an informer (*e. g.*, where the Government has furnished a list of persons who *might have* information concerning the violation), the privilege does not apply or is set aside. These considerations, which combine the essence of the protection afforded by the informer's privilege and the theory of waiver, point the way toward resolution of the issues at bar.

■■■ The court is of the opinion that the privilege should not preclude disclosure in this case where either the identity of the person giving information has already been disclosed or the person giving information is to be called as a witness by the Government at trial, there being nothing to protect in these two instances. Consequently, the court deems it proper to order the Government to disclose the names of the witnesses it intends to call at trial. Shultz v. Farino Excavating Co., Inc., *supra*. It follows, therefore, that the Government should then make available to the respondents the statements, if any, or information taken from those persons who are to be witnesses, there being no privilege to prohibit such production. The identity of those persons whose names have not been disclosed and/or who are not to be called as witnesses still are to be protected by the informer's privilege. It should also be noted that the Government has the right to request the court to excise any portions of the statements it must turn over to the respondents, if such portions would tend to reveal the identity of a person still classified as an informer, *i. e.*, one whose identity has not been disclosed or is not going to be a witness.

Although there were over seventeen questions to which the respondents seek to compel answers, the court has taken the liberty of merely setting forth the foregoing guidelines, rather than ruling on each contended question *seriatim*, since it is of the opinion that the ordered disclosure will negate the necessity for answers to many, if not all, of the questions propounded and any issues with respect to the remaining questions can be resolved by the parties by resort to the guidelines set forth herein. The ordered disclosure will be made on or before November 16, 1973. It is so ordered.