**Maureen E. COUGHLIN and Frank S. Mistretta, Plaintiffs–Appellants,**

v.

**Harry LEE a/k/a Jefferson Parish Sheriff, Defendant–Appellee.**

No. 90–3442

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 12, 1991.

**19.** *See supra* note 6.

Mark M. Gonzalez and Lawrence B. Jones, Scheuermann & Jones, New Orleans, La., for plaintiffs-appellants.

Daniel R. Martiny, Lee, Martiny & Caracci, Metairie, La., for defendant-appellee.

Before CLARK, Chief Judge, WILLIAMS, and BARKSDALE, Circuit Judges.

CLARK, Chief Judge:

Two police deputies contended in the trial court that they were impermissibly discharged by the parish sheriff in retaliation for their exercise of free speech and political association. Because their speech did not address a matter of public concern, we affirm the district court's directed verdict against their claim for violation of freedom of speech. Because the district court's discovery rulings cut off the development of the deputies' freedom of association claim, we remand for reconsideration of those rulings and that claim.

I.

Defendant Harry Lee became sheriff of Jefferson Parish, Louisiana in 1980. During the early 1980's he established a program known as "Operation Wake–Up," designed to discourage local high school children from becoming involved in criminal activities. The program consisted of bringing inmates with long criminal histories from the Jefferson Parish Correctional Center to local high schools where, handcuffed, shackled, and escorted by armed prison guards, they would describe their own involvement in crime to the students and strongly urge them not to engage in drug use, shoplifting, and other criminal activities.

The program had a very positive effect on the students, prompting Lee in July 1984 to write letters of appreciation to the inmate participants, including Joseph Kenneth France, a career criminal who had participated enthusiastically in Operation Wake–Up. Several years later, after his release from prison, France set up an ostensible counselling service for troubled teenagers called "Operation Wake–Up, Inc.," which he used to lure teenagers whom he then molested sexually. To assist in gaining the confidence of the teenagers and their parents, France displayed the framed letter from Lee on the wall of his Operation Wake–Up, Inc. office.

On October 27, 1987, the Jefferson Parish Sheriff's Office (JPSO), having developed evidence of the true nature of France's activities, executed a search warrant on Operation Wake–Up, Inc. The commendation letter from Lee was seized along with other evidence and taken to JPSO's Investigation Bureau.

Deputies Frank Mistretta and Maureen Coughlin, who were assigned to the Personal Violence Section of JPSO, participated in the execution of the search warrant, although neither was the officer-in-charge of the France investigation. Mistretta had worked at JPSO for eighteen years, Coughlin for seven. Both supported Sheriff Lee's political opponent, Art Lentini, in the upcoming November 1987 election. Mistretta actively campaigned for Lentini, distributing yard signs, bumper stickers, and campaign stickers; Coughlin did not support Lentini overtly. The day after the execution of the search warrant, Rick Walther, the plaintiffs' former supervisor, now an officer in the Kenner Police Department and a vocal supporter of Lentini, contacted the plaintiffs. He asked Coughlin to deliver a copy of the commendation letter to him; she did so. Mistretta provided Walther with the names of the

**1156**

juvenile victims of France's operation. On October 29th, a local television station aired a copy of the commendation letter and the names of the alleged victims; portions of the letter also appeared in the local newspaper. The media suggested that Sheriff Lee had either endorsed France's Operation Wake–Up, Inc. or personally recommended France's counselling services to parents of troubled teenagers.

Despite this negative publicity, Lee was re-elected in November 1987. JPSO thereafter investigated the release of the letter and victims' names. The reproduction of the letter received by the television station was marked by a crack in the glass covering the letter caused when it was dropped during storage of the seized evidence, clearly indicating that the letter had been copied after its seizure as evidence by JPSO. JPSO therefore questioned and performed polygraph tests on all employees assigned to the Personal Violence Section. Mistretta and Coughlin first denied their involvement in releasing the evidence, but later admitted their actions. Both deputies conceded that they knew their actions violated a JPSO policy against releasing evidence or names of victims related to an ongoing investigation. On December 14th, Lee terminated both deputies' employment; the official reason given for their terminations was gross misconduct in knowingly violating JPSO policy.

In December 1988, Coughlin and Mistretta filed suit in district court under 42 U.S.C. § 1983, alleging that they had been impermissibly discharged in retaliation for their political activities and affiliations in violation of the First and Fourteenth Amendments. Upon recommendation by a magistrate, the district court limited discovery of JPSO's personnel files by the plaintiffs to evidence of the removal or disclosure of confidential materials from JPSO files or records. Discovery was further limited to files covering a period of

roughly two years, from one year prior to Lee's re-election on November 21, 1987 to one year after the plaintiffs' termination date. The court's evidentiary rulings during trial paralleled these discovery limitations. After presentation of the plaintiffs' case, the district court granted a directed verdict in favor of the defendant, holding that the plaintiffs' speech did not address a matter of public concern, and therefore was not constitutionally protected.

## II.

▇▇▇ In reviewing a directed verdict, we must consider all the evidence in the light and with reasonable inferences most favorable to the party who opposed the motion. A verdict should be directed only if those facts and inferences point so strongly in favor of one party that reasonable people could not have reached a contrary conclusion.[1]

The district court found that the plaintiffs had presented no evidence to support their contention that their conduct was protected by the First Amendment. Because both parties' briefs indicate some confusion regarding the various tests and standards applicable in evaluating a First Amendment claim, we review that framework in greater detail than is strictly necessary to resolve plaintiffs' free speech claim.

▇▇▇ As a threshold requirement, a public employee claiming violation of freedom of speech must show that his speech is entitled to judicial protection under the First Amendment. It is so entitled only if it addresses a matter of "public concern," which "must be determined by the content, form, and context of a given statement, as revealed by the whole record."[2] This determination is a question of law to be resolved by the court.[3] If the speech does not address a matter of public concern, a court will not scrutinize the reasons moti-

1. *Eyre v. McDonough Power Equip., Inc.,* 755 F.2d 416, 419 (5th Cir.1985); *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

2. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

3. *Rankin v. McPherson,* 483 U.S. 378, 386 n. 9, 107 S.Ct. 2891, 2898 n. 9, 97 L.Ed.2d 315 (1987); *Fyfe v. Curlee,* 902 F.2d 401, 403 (5th Cir.), *cert. denied* — U.S. ——, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990).

vating a discharge allegedly in retaliation for that speech.[4] If the speech at issue does address a matter of public concern, the court then engages in the so-called "*Pickering/Connick* test," balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[5] The more central a matter of public concern is to the speech at issue, the stronger the employer's showing of counter-balancing governmental interests must be.[6] Only if the court finds that the employee's First Amendment rights outweigh the government's interest in the effective provision of public services does the fact-finder proceed to consider the separate issue of causation.

*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*[7] mandates that the employee must demonstrate that his protected conduct was a substantial motivating factor in his discharge.[8] The employer then has the burden of showing a legitimate reason for which it would have discharged the employee even in the absence of his protected conduct.[9] The employee can refute that showing by evidence that his employer's ostensible explanation for the discharge is merely pretextual. Plaintiffs' assertion that the *Pickering/Connick* test modified the *Mt. Healthy* inquiry is therefore incorrect; the two tests address separate elements of a free speech claim.

The district court found it unnecessary to proceed farther than the first step of this analysis, holding that the plaintiffs' actions, intended solely to embarrass Sheriff Lee politically, did not address a matter of public concern. Coughlin and Mistretta contend, on the other hand, that politically motivated speech, by definition, involves a matter of public concern. Appellate courts review the question of whether speech addresses a matter of public concern *de novo*.[10] Issues rise to the level of public concern if an individual speaks primarily in his role as a citizen rather than as an employee,[11] or if the information conveyed is of "relevance to the public's evaluation of the performance of governmental agencies."[12] Had Coughlin or Mistretta alleged mismanagement or corruption as a result of Sheriff Lee's administration of JPSO, their expression—particularly within the context of public debate surrounding a contested election—might well have addressed a matter of public concern. We have previously found disclosure of misbehavior by public officials, especially concerning the operation of a police department, to implicate public concern.[13] Their own testimony shows, however, that neither Coughlin nor Mistretta believed the commendation letter to be indicative of improper behavior by Lee; neither accused him of corruption or breach of trust. Both deputies simply considered the commendation letter and the list of victims' names to

---

4. *Id.* 461 U.S. at 147–48, 103 S.Ct. at 1690.

5. *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

6. *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692–93; *Moore v. City of Kilgore*, 877 F.2d 364, 372 (5th Cir.), *cert. denied* 493 U.S. 1003, 110 S.Ct. 562, 107 L.Ed.2d 557 (1989).

7. 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

8. *Id.* at 287, 97 S.Ct. at 576.

9. *Id.*

10. *Kirkland v. Northside Indep. School Dist.*, 890 F.2d 794, 798 (5th Cir.1989), *cert. denied* —

U.S. ——, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Terrell v. University of Tex. Sys. Police*, 792 F.2d 1360, 1362 n. 2 (5th Cir.1986), *cert. denied* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

11. *Thompson v. City of Starkville*, 901 F.2d 456, 461 (5th Cir.1990); *Kirkland*, 890 F.2d at 799; *Terrell*, 792 F.2d at 1362.

12. *Day v. South Park Indep. School Dist.*, 768 F.2d 696, 700 (5th Cir.1985), *cert. denied* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Davis v. West Community Hosp.*, 755 F.2d 455, 461 (5th Cir.1985); *see also Thompson*, 901 F.2d at 464–65.

13. *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir.1988); *Thompson*, 901 at 463.

be a valuable political tool for Lee's opponent. As such, despite the public context and form in which they released this information, its content did not address a matter of public concern.[14] We therefore affirm the district court's directed verdict in favor of the defendant on the freedom of speech claim.

### III.

■ Coughlin and Mistretta's complaint alleges their dismissal for violation of JPSO policy was pretextual and that the real reason for dismissal was their non-support of Sheriff Lee's re-election and their support of his political opponent. Throughout the trial and appeal of this case, plaintiffs have protested their termination was a "political discharge." The district court's ruling only addressed their alleged freedom of speech violation.

■ A public employee's claim that he has been discharged for his political affiliation in violation of his right to freely associate is not subject to the threshold public concern requirement. "Freedom to associate with others for the common advancement of political beliefs and ideals is ... protected by the First and Fourteenth Amendments. [Cites omitted] The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom."[15] For this reason, the Supreme Court has found dismissals of public employees based solely on patronage or political affiliation to violate the First Amendment[16] unless such affiliation is "an appropriate requirement for the effective performance of the public office in-

volved."[17] This court has subsequently interpreted Supreme Court jurisprudence to require a court evaluating discharge based on political activity to balance the First Amendment values implicated by those activities against the possible disruptive effect on governmental provision of services within the specific context of each case.[18] The burden of proof of causation then follows the allocation enunciated in *Mt. Healthy.*[19]

Our conclusion that plaintiffs' speech did not raise matters of public concern does not foreclose their allegations that the reason given for their discharge was pretext. The court's discovery rulings should be reconsidered in this context.

### IV.

■ During pretrial discovery, Coughlin and Mistretta requested production of the entire personnel files—including complaints, internal affairs and disciplinary files, but excluding all identification of complainants or confidential witnesses—for various past and/or present employees of JPSO. After Lee objected, the district court limited discovery to files evidencing removal or disclosure of confidential material—misconduct similar to the allegations against the plaintiffs—over approximately a two-year period. Coughlin and Mistretta contend that the court erred in imposing these limitations on the scope of discovery and thereby effectively prevented them from proving that Lee had really dismissed them for engaging in political activity.

■ We review the district court's discovery rulings for abuse of discretion.[20]

**14.** *See Jurgensen v. Fairfax County,* 745 F.2d 868, 872 & 888 (4th Cir.1984) (release of report to press which did not find corruption, abuse, waste, or mismanagement in police department did not address matter of public concern).

**15.** *Elrod v. Burns,* 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976), *quoting Kusper v. Pontikes,* 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973).

**16.** *Id.* 427 U.S. at 372–73, 96 S.Ct. at 2689; *Branti v. Finkel,* 445 U.S. 507, 519, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980); *Rutan v. Republican Party of Illinois,* — U.S. —, 110 S.Ct. 2729, 2736, 111 L.Ed.2d 52 (1990).

**17.** *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

**18.** *McBee v. Jim Hogg County,* 730 F.2d 1009, 1016–17 (5th Cir.1984) (en banc).

**19.** 429 U.S. at 287, 97 S.Ct. at 576; *accord Robinson v. Boyer,* 825 F.2d 64, 68 (5th Cir.1987); *Tanner v. McCall,* 625 F.2d 1183, 1190 (5th Cir. 1980), *cert. denied* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

**20.** *Sanders v. Shell Oil Co.,* 678 F.2d 614, 618 (5th Cir.1982) (discovery); *Hardy v. Chemetron Corp.,* 870 F.2d 1007, 1009 (5th Cir.1989) (evidentiary rulings).

Federal Rule of Civil Procedure 26(b) permits "discovery regarding any matter not privileged, which is relevant to the subject matter in the pending action." Discoverable information is not limited to admissible evidence, but includes anything "reasonably calculated to lead to the discovery of admissible evidence." [21] Courts have traditionally construed "relevance" broadly: information is relevant if it "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." [22] Thus, although the district court is customarily accorded wide discretion in handling discovery matters,[23] we will not uphold a ruling which has "fail[ed] to adhere to the liberal spirit of the Rules" [24] or which results in fundamental unfairness at trial.[25]

■ To rebut Lee's assertion of a permissible reason for their discharge, the plaintiffs must prove that the asserted reason was no more than a pretext. Pretext can be demonstrated by circumstantial evidence.[26] The plaintiffs sought discovery of the personnel files of JPSO employees who had arguably been guilty of a variety of infractions more serious than those committed by plaintiffs, but who nevertheless were not discharged by Lee. Allegedly, these employees were political supporters of Lee and had contributed to his campaign fund. Evidence of repeated disparity in the punishment meted out to Lee's supporters and non-supporters is clearly relevant

in considering pretext. In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files.[27] All or some parts of these personnel files could be central to the plaintiffs' effort to prove pretext. The information contained therein may be in the exclusive control of the opposing party. We need not resort to a particularly broad definition of "relevance" in this case, however, to conclude that the district court's limitation of discovery constituted an abuse of discretion.

■ Lee contends that the documents at issue are confidential police files which are discoverable only after weighing their relevancy against the government's interest in maintaining confidentiality.[28] Plaintiffs contend that under Louisiana law such personnel files, excluding any information regarding confidential sources, are public records. When considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence and scope of a privilege.[29] Federal courts will, however, consider state policies supporting a privilege in weighing the government's interest in confidentiality.[30] Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation or information which would reveal the identity of confidential informants,[31] although if all information indicating the identity of an in-

**21.** F.R.C.P. 26(b); *Dunbar v. United States,* 502 F.2d 506, 509–10 (5th Cir.1974).

**22.** *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

**23.** *Burns v. Thiokol Chemical Corp.,* 483 F.2d 300, 304 (5th Cir.1973).

**24.** *Id.* at 305.

**25.** *O'Neal v. Riceland Foods,* 684 F.2d 577, 581 (8th Cir.1982).

**26.** *Tanner v. McCall,* 625 F.2d 1183, 1192 & n. 16 (5th Cir.1980).

**27.** *E.g. Trevino v. Celanese Corp.,* 701 F.2d 397, 405–06 (5th Cir.1983); *Burns,* 483 F.2d at 303–07; *Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980); *Rich v. Martin Marietta Corp.,*

522 F.2d 333, 344–45 (10th Cir.1975); *accord Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 592 (5th Cir.1978) (ADEA claim).

**28.** *See Brown v. Thompson,* 430 F.2d 1214, 1215 (5th Cir.1970).

**29.** Fed.Rule of Evid. 501; *Kerr v. United States Dist. Ct. for Northern Dist.,* 511 F.2d 192, 197 (9th Cir.1975), *aff'd* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1098–1100 (5th Cir.1970), *cert. denied* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971).

**30.** *Garner,* 430 F.2d at 1098–1100.

**31.** *Swanner v. United States,* 406 F.2d 716, 719 (5th Cir.1969).

formant can be eliminated by excision, the document is discoverable.[32] Louisiana law creates a similar privilege.[33] To determine whether this qualified privilege bars discovery of given documents, the trial court should consider the ten factors articulated in *Frankenhauser v. Risso* [34] in balancing the government's interest in confidentiality against the litigant's need for the documents.

The record does not disclose that the district court considered the documents to be privileged, inspected them *in camera* or engaged in balancing of competing interests. The district court did not base its decision on the documents' alleged privileged status. The files requested do not appear to concern ongoing criminal investigations. Plaintiffs do not seek material identifying confidential sources.

The district court appears to have limited discovery because it considered these files irrelevant to the plaintiffs' freedom of speech case. On remand, the district court should determine which of the files are discoverable. It may choose to inspect them *in camera* to determine if any are privileged and to weigh their relevance against the government's interest in maintaining confidentiality in accordance with the factors articulated in *Frankenhauser*.

 We reverse the discovery rulings appealed and remand to the district court to permit that court to determine what additional discovery of JPSO personnel files should be allowed and under what conditions. The district court may determine an appropriate limit of the scope of discovery on grounds of burdensomeness,[35] guided by the principle that the more important the information sought in discovery is to the case, the greater the burden the opposing party can be legitimately required to shoulder.[36] After allowing appropriate discovery in accordance with this opinion,

the court should conduct such further proceedings as may be necessary on the pretext/right of association claim which plaintiffs sought to present.

The judgment of the district court is AFFIRMED IN PART, and, in part, REVERSED and REMANDED with directions.

---

**32.** See *Association for Reduction of Violence v. Hall,* 734 F.2d 63, 66 (1st Cir.1984); *United States v. Real Estate Bd.,* 59 F.R.D. 637, 641 (E.D.Mo.1973); *United States v. Julius Doochin Enterprises, Inc.,* 370 F.Supp. 942, 944–45 (M.D.Tenn.1973).

**33.** La.R.S. 44:1 & 3 (1982).

**34.** 59 F.R.D. 339, 344 (E.D.Pa.1973).

**35.** *Marshall,* 576 F.2d at 592; *Rich,* 522 F.2d at 343.

**36.** *Rich,* 522 F.2d at 343.