**JICARILLA APACHE NATION, formerly Jicarilla Apache Tribe, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–25L.**

United States Court of Federal Claims.

April 19, 2004.

Alan Robert Taradash, Nordhaus Law Firm, Albuquerque, NM, for Plaintiff.

Robert William Rodrigues, U.S. Department of Justice, Washington, DC, for Defendant.

### ORDER

ALLEGRA, Judge.

Pursuant to this court's order of April 1, 2004, on April 13, 2004, each party in this case filed a proposed confidentiality agreement and protective order to govern document production herein. The parties are to be commended for making great strides in finding common ground on this matter—the submitted proposals are nearly identical. Indeed, the sole remaining point of contention is whether 25 U.S.C. § 2103(c) (2000), enacted as part of the Indian Mineral Development Act of 1982 ("IMDA"), 25 U.S.C. § 2101, *et seq.*, should be included within the definition of "Applicable Confidentiality Laws" that, in accordance with paragraph 3 of the proposed orders, the government may not rely upon to assert a privilege to, or protection from, discovery. Defendant ar-

---

gues that section 2103(c) should be excluded from that definition, the effect of which would be to allow defendant to withhold from plaintiff any documents covered by this statute. Not so, plaintiff contends, asserting that the IMDA does not preclude this information from being discovered, but merely protects it from public disclosure, a condition that is readily satisfied by the proposed agreement and order. For the reasons that follow, the court concludes that plaintiff is correct.

"The IMDA governs the Secretary's approval of agreements for the development of certain Indian mineral resources through exploration and like activities." *United States v. Navajo Nation,* 537 U.S. 488, 509, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003). Section 2103(c) provides, in pertinent part, that:

> Not later than thirty days prior to formal approval or disapproval of any Minerals Agreement, the Secretary shall provide written findings forming the basis of his intent to approve or disapprove such agreement to the affected Indian tribe. Notwithstanding any other law, such findings and all projections, studies, data, or other information possessed by the Department of the Interior regarding the terms and conditions of the Mineral Agreement, the financial return to the Indian parties thereto, or the extent, nature, value or disposition of the Indian mineral resources, or the production, products or proceeds thereof, shall be held by the Department of the Interior as ***privileged proprietary information*** of the affected Indian or Indian tribe.

25 U.S.C. § 2103(c) (2000) (emphasis added). Defendant argues that the statute's use of the phrase "privileged proprietary information" signals that the cited information is exempt from discovery. Although this assertion has superficial appeal, several factors ultimately lead the court to conclude that the IMDA was not intended to create an evidentiary privilege that would remove the information protected thereby from the reach of discovery.

▪ As is true of the Federal Rules of Civil Procedure, this court's discovery rules are designed to encourage the open exchange of information by litigants, with a view towards utilizing all rational means for ascertaining truth. *See Energy Capital Corp. v. United States,* 45 Fed.Cl. 481, 484 (2000); *see also Jaffee v. Redmond,* 518 U.S. 1, 8–9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nonetheless, like its federal rule counterpart, RCFC 26(b)(1) excludes from the category of discoverable information matter that is "privileged." It is well recognized that such a discovery privilege may be created by statute. *See Baldrige v. Shapiro,* 455 U.S. 345, 356, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982).

To decide whether section 2103(c) creates such a discovery privilege, we begin with the plain meaning of the statute's language. *See Baldrige,* 455 U.S. at 356, 102 S.Ct. 1103; *Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 163, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981). Familiar lexicons reveal that the statute's use of the term "privileged" does not necessarily signify that Congress intended the information collected under the IMDA to be immune from discovery. In its common usage, something is "privileged" if it "[e]njoy[s] a privilege," and a "privilege" is merely a "special advantage, immunity, permission, right or benefit granted to or enjoyed by an individual, class, or caste." The American Heritage Dictionary of English Language 1396 (4th ed.2000); *see also* Black's Law Dictionary 1077 (9th ed.1979) ("a particular and peculiar benefit or advantage enjoyed by a person, company, or class, beyond the common advantages of other citizens. An exceptional or extraordinary power or exemption. A right, power, franchise, or immunity held by a person or class, against or beyond the course of the law."). Generically, then, while the use of the term "privilege" suggests that Congress intended the IMDA information to benefit from some special rule or protection, it neither specifically defines that rule or protection nor, especially, indicates that the protection extends to preventing disclosure by way of discovery. *See Zambrano v. INS,* 972 F.2d 1122, 1125 (9th Cir.1992), *vacated on other grounds,* 509 U.S. 918, 113 S.Ct. 3028, 125 L.Ed.2d 717 (1993).

■ A host of considerations, indeed, preclude this court from implying that Congress intended to create the latter sort of exemption. For one thing, the Supreme Court has made clear that "[a] statute granting a privilege is to be strictly construed so as 'to avoid a construction that would suppress otherwise competent evidence.'" *Baldrige*, 455 U.S. at 360, 102 S.Ct. 1103 (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961)). Applying this rule of construction, the Court has observed that "when Congress has intended [information] not to be subject to compulsory process it has said so." *St. Regis Paper*, 368 U.S. at 218, 82 S.Ct. 289; *see also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C.Cir.1984) ("Congress must 'clearly' and 'strongly' indicate its intent to contradict th[e] broad objective favoring disclosure in judicial proceedings," and "where Congress has thought it necessary to protect against court use of records, it has expressly so provided by specific language."); *Freeman v. Seligson*, 405 F.2d 1326, 1348–52 (D.C.Cir.1968). Numerous statutes, in fact, illustrate this proposition—they expressly provide, for example, that various information is "immune from legal process" and/or "shall not be subject to discovery." These statutes thus employ language that leaves no doubt that Congress intended the information in question to be exempt from discovery.[1]

■ By comparison, the language of section 2103(c) plainly lacks the clear direction that the Supreme Court has required, and the Congress, in other contexts, has supplied, to create an exception to discovery. Indeed, confirmation that the "privileged" language was not intended to create either a discovery or evidentiary privilege may be found in the legislative history of IMDA, which indicates that the language was included, instead, to exempt this information from disclosure under the Freedom of Information Act (FOIA). *See* H.R.Rep. No. 97–746, at 12 (1982) (describing the purpose of this provision); S.Rep. No. 97–472, at 12 (1982).[2] This understanding was carried forward in the regulations promulgated by the Bureau of Land Management to implement this provision, which regulations are remarkable both in repeatedly indicating that the provision was

---

**1.** With exceptions not herein relevant, *see, e.g.*, 13 U.S.C. § 9(a) (2000) (certain census reports "shall be immune from legal process, and shall not, without the consent of the individual or establishment concerned, be admitted as evidence or used for any purpose in any action, suit, or other judicial or administrative proceeding"); 15 U.S.C. § 2055(e)(2) (2000) (certain consumer product safety reports "shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding"); 20 U.S.C. § 9573(d)(1)(B) (2000) (certain education statistics "shall be immune from legal process and shall not, without the consent of the individual concerned, be admitted as evidence or used for any purpose in any action, suit, or other judicial or administrative proceeding"); 22 U.S.C. § 3144(d) (2000) (foreign investment information "shall be immune from legal process and shall not be used as evidence or for any purpose in any Federal, State, or local government action, suit, or other administrative or judicial proceeding"); 23 U.S.C. § 409 (2000) (certain highway safety data "shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages"); 42 U.S.C. § 3789g(a) (2000) (certain public health information "shall be immune from legal process, and shall not, without the consent of the person furnishing such information, be admitted as evidence or

used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings"); 42 U.S.C. § 10604(d) (2000) (same rule as to victim compensation statistics); 42 U.S.C. § 10708(b) (2000) (same rule as to certain state justice statistics); 49 U.S.C. § 111(i)(2)(B) (2000) (certain transportation reports "shall be immune from legal process; and ... shall not, without the consent of the individual concerned, be admitted as evidence or used for any purpose in any action, suit, or other judicial or administrative proceeding").

**2.** When the bill that become the IMDA was initially considered by the Senate, the Department of the Interior proposed language specifying that findings provided to an Indian tribe would be exempt from disclosure under the FOIA, to ensure no "competitive harm by the release of an economic assessment ... transmitted in confidence and exclusively for the tribe's benefit." S.Rep. No. 97–472, at 12. Interior later reiterated this view to the House Committee on Interior and Insular Affairs, which developed the language, subsequently enacted, to protect such findings "and all other information of a business or financial character relating to such agreements." H.R.Rep. No. 97–746, at 5–6, 12, U.S.Code Cong. & Admin.News 1982, pp. 3465, 3467–68.

designed to prohibit disclosure of mineral information under FOIA and in failing to refer whatsoever to any discovery or evidentiary privilege. *See* 43 C.F.R. § 3100.4(c) (1998); *see also* 63 Fed.Reg. 52946, 52947–49 (Oct. 1, 1998) (discussing this provision, at length, as prohibiting public disclosure under FOIA).

Given these circumstances, it is perhaps not surprising that defendant has not cited—and this court has not found—any case holding that section 2103(c) or any other provision merely using the word "privileged" should be construed to create a discovery or evidentiary privilege.[3] Conversely, on at least one occasion, this court explicitly has held that the IMDA does not forbid disclosure through discovery. *See Osage Nation v. United States,* Protective Order, No. 00–169, at ¶ 7 (Fed.Cl. July 11, 2002). There, this court concluded–

> The Court notes defendant's concern that 'privileged proprietary information' within the meaning of 25 U.S.C. § 2103(c) may be included in some of the confidential documents. After consideration of the possibly conflicting policies involved, the Court decides that plaintiff should not be blocked from discovery provided that plaintiff treats 'privileged proprietary information' in accordance with the terms of this Order.

In addition, the district court in *Cobell* similarly ordered the production of information otherwise prohibited from disclosure by the IMDA. *See Cobell v. Babbitt,* Order, No. 96–1285 (D.D.C. Mar. 29, 2000). Notably, in that case, defendant did not argue that such information was exempt from discovery, but instead merely sought protections against the public disclosure of such information. *See* Reply Supp. Defs.' Mot. for Protective Order for Defs.' Production of Confidential Information & Opp. to Pls.' Request for Sanctions Under Rule 37, *Cobell v. Babbitt,* No. 96–1285 (D.D.C. Feb. 15, 2000). In the court's

view, that is all defendant can reasonably expect here, as well.

In consideration of the foregoing, the court concludes that 25 U.S.C. § 2103(c) should be included within the definition of "Applicable Confidentiality Laws" in the confidentiality agreement and protective order that will be issued today in this case and the related case of *Pueblo of Laguna v. United States,* No. 02–24L.

**IT IS SO ORDERED.**

---

**3.** The court is particularly bothered by defendant's apparent belief that the discovery privilege allegedly embodied by section 2103(c) is absolute, rather than qualified. Such absolute privileges are ordinarily not applied to economic data, but instead are generally reserved for such things as state secrets. *See, e.g., United States v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 97 L.Ed. 727 (1953). By comparison, many other well-established privileges may be overcome by a showing of strong need. *See, e.g., Zenith Radio Corp. v. United States* 764 F.2d 1577, 1580 (Fed. Cir.1985) (deliberative process privilege); *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir.1991) (investigative file privilege); *Hickman v. Taylor,* 329 U.S. 495, 510–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (work-product privilege as to factual materials).