United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 2, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 06-20330

---

In re: UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Petitioner.

---

Petition for Writ of Mandamus to the
United States District Court for the
Southern District of Texas, Houston

---

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

The United States Department of Homeland Security ("Petitioner") petitions this Court to issue a writ of mandamus to correct a discovery order by the United States District Court for the Southern District of Texas, Houston Division. Petitioner claims the district court erred by compelling disclosure of documents protected by the law enforcement privilege. We conclude that the district court erred in declaring that no law enforcement privilege exists (beyond protecting confidential informant identity). We remand the case to the district court for an *in camera* review of the documents. Confident that the district court will conduct its review in accordance with this opinion, we dismiss the petition without prejudice to the rights of the parties to seek additional relief following the review.

## I. BACKGROUND

Surety National Casualty Corporation, a surety company, and AAA Bonding Agency, Inc., its bonding agent (collectively "Respondents"), underwrite bonds posted by aliens to enable them to secure release from Petitioner's custody pending removal. *See generally* 8 C.F.R. 103.6. Petitioner found that Respondents had breached their obligations on more than 1400 immigration bonds, totaling more than nine million dollars in cumulative bond debt. The vast majority of Respondents' administrative appeals were denied.

Respondents brought suit seeking a judicial order estopping Petitioner from collecting bonds because of Petitioner's alleged "affirmative misconduct." Petitioner filed a counterclaim for the outstanding bond debt. To facilitate settlement of the debt dispute, the parties agreed to a framework for alternative dispute resolution ("ADR"). As part of ADR, the parties agreed to review fifty of the bond breach determinations with twenty-five selected by each side. Petitioner also agreed to produce each respective alien's file for those fifty determinations being reviewed. According to the ADR agreement, the production requirement was "exclusive of any privileged or otherwise protected documents, which will be set forth on a privilege log for further review by the Court, if necessary." Petitioner produced nearly 4000 pages of documents but withheld approximately 2000 pages, claiming that they

2

were privileged.

Respondents moved to compel production of the withheld documents. The district court did not review the disputed documents, yet granted the motion to compel. Significantly, the court found no support for the law enforcement privilege in this Circuit. Petitioner filed an emergency petition for writ of mandamus and an emergency motion to stay the district court's order pending disposition of the petition. This Court has granted the stay.

## II.  STANDARD OF REVIEW

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). One area where this Court has granted mandamus relief is in the context of privileged documents. *See In re Aventel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003). Mandamus is appropriate if the district court errs in ordering the discovery of privileged documents, as such an order would not be reviewable on appeal. *Id.; see also In re Burlington N.*, 822 F.2d 518, 522 (5th Cir. 1987) ("[C]ases have recognized the importance of the asserted privilege and the absence of an adequate alternative method of obtaining review."). Courts have considered the seriousness and novelty of the privilege issue, and "[r]espected commentators have . . . noted that the difficulty of obtaining effective review of discovery orders, the serious injury

that sometimes results from such orders, and the often recurring nature of discovery issues support use of mandamus in exceptional cases." *In re Burlington N.*, 822 F.2d at 522.

### III. DISCUSSION

Petitioner contends that the documents at issue fall within the scope of the law enforcement privilege. These documents allegedly are used by Petitioner in enforcing immigration and nationality laws, detecting violations of these laws, and referring such violations for prosecution. In support of its contention, Petitioner offered the declaration of John P. Clark, the Deputy Assistant Secretary of U.S. Immigration and Customs Enforcement, a bureau within the Department of Homeland Security. Clark, in that declaration, states that the documents contain information about ongoing criminal investigations—including investigative leads, law enforcement methods and techniques, internal investigative memoranda, and identifying information relating to witnesses and law enforcement personnel, including undercover operatives. Petitioner argues that these concerns "go to the heart of the law enforcement privilege."

A. The Fifth Circuit's Application of the Law Enforcement Privilege

The district court found no precedent supporting a law enforcement privilege and therefore refused to apply the privilege to any portion of Petitioner's documents. Petitioner disputes that no such privilege exists in this Circuit. Petitioner relies on two

4

Fifth Circuit cases to support its contention: *Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970), and *Swanner v. United States*, 406 F.2d 716 (5th Cir. 1969).

In *Brown*, this Court reviewed the dismissal of a wrongful death action in which the plaintiffs sought discovery of police reports. The district court "declined to require the production of files . . . on the ground that the contents were privileged and that the files concerned parts of a homicide investigation which was then still open, the contents of which were highly confidential." *Brown*, 430 F.2d at 1215. Upon review, this Court stated that such "[g]overnment documents are the outstanding example of matter which is privileged and which is not subject to disclosure. It will expire upon the lapse of an unreasonable length of time. Whether there should be disclosure is within the discretion of the trial court . . . ." *Id*.

In *Swanner*, this Court addressed whether the district court had "erred in failing to require production of certain investigative files, principally for the purpose of supplying plaintiffs with the identity of two people who were under suspicion in connection with the [underlying crime]." *Swanner*, 406 F.2d at 718. The *Swanner* Court stated that "pendency of a criminal investigation is a reason for denying discovery of investigative reports [, although it] would not apply indefinitely . . . ." *Id*. at 719. Although concluding that the district court had not abused

5

its discretion, this Court reversed and remanded the case for a new trial in "the interests of justice."  *Id*.

This Circuit also has recognized the law enforcement privilege more recently.  In *Coughlin v. Lee*, we stated that, in addition to protecting the identity of a confidential informant, "[f]ederal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation."  946 F.2d 1152, 1159 (5th Cir. 1991).  In that case, the district court had limited discovery of police files because it considered those files "irrelevant" to the plaintiffs' freedom of speech claim.  *Id*. at 1160.  On remand, we instructed the district court to review the documents instead for discoverability on the basis of the law enforcement privilege.  *Id*.

Our case law has acknowledged the existence of a law enforcement privilege beyond that allowed for identities of confidential informants.[1]  Moreover, in today's times the compelled

_____

[1] Other circuits also recognize the law enforcement privilege as covering documents relating to ongoing criminal investigations.  *See, e.g.*, *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997) (recognizing the "law enforcement investigatory privilege"); *In re Dep't of Investigation*, 856 F.2d 481, 483–84 (2d Cir. 1988) (stating that the law enforcement privilege exists and prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation"); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (stating that the "law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory

production of government documents could impact highly sensitive matters relating to national security. Therefore, the reasons for recognizing the law enforcement privilege are even more compelling now than when *Brown*, *Swanner*, and *Coughlin* were decided. Such a privilege should have been recognized by the district court.[2] The

files") (internal quotation marks and ellipse omitted); *Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. July 31, 1998) (unpublished), *aff'd Tuite v. Henry*, 203 F.3d 53 (D.C. Cir. 1999) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. [It] serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations.").

[2] Both the district court and Respondents claim that the Fifth Circuit has recognized only an executive privilege, not a law enforcement privilege. Consequently, they argue, Petitioner's claim to a law enforcement privilege is not supported by this Circuit's law. However, they provide no basis for why the privilege should be labeled "executive" instead of "law enforcement" or how that label impacts the substance of the privilege. Like other circuits using the law enforcement moniker, the purpose of the privilege in the Fifth Circuit is to protect from release documents relating to an ongoing criminal investigation. The term "law enforcement privilege" appears to have evolved over time out of the same concept. *Compare Black v. Sheraton*, 564 F.2d 531, 545-46 (D.C. Cir. 1977) (recognizing, in the context of discussing executive privilege, that law enforcement documents disclosing "investigative techniques or sources" should be minimized) *with Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) (using the term "law enforcement privilege"). Fifteen years ago this Circuit addressed the law enforcement privilege without naming it. *See Coughlin*, 946 F.2d at 1159-60. In any event, the law enforcement privilege is in fact a subcategory of the executive privilege. *Landry*, 204 F.3d at 1135 (describing the law enforcement privilege as a "qualified, common law executive privilege[]"). In short, however it is labeled, a privilege exists to protect government documents relating to an ongoing criminal investigation.

court legally erred in refusing to do so.  Petitioner also is correct that the error of ordering the discovery of potentially privileged documents, without judicial review of the those documents, would be irremediable on appeal.  *See In re Avantel, S.A.*, 343 F.3d at 317.  Hence, Petitioner has no other means to obtain the relief sought.  *See Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989).

Yet, this Court does not know whether any of the disputed documents fall within the realm of the privilege.  The documents were not presented for our review.  In any event, determining privilege is a "particularistic and judgmental task" of balancing the "need of the litigant who is seeking privileged investigative materials . . . against the harm to the government if the privilege is lifted."  *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).  In this case, we think this task—the determination of privilege following an initial review of the documents—is best left to the district court.

B.  Determining Whether the Law Enforcement Privilege Protects Particular Documents

On remand, the district court should review the documents at issue *in camera* to evaluate whether the law enforcement privilege applies to the documents at issue.  In making its determinations, the court must balance "the government's interest in confidentiality against the litigant's need for the documents."  *Coughlin*, 946 F.2d at 1160.  The court, therefore, should consider

the *Frankenhauser* factors. *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar. 13, 1973) (unpublished) (developing the factors).

The oft-cited *Frankenhauser* test consists of weighing the following ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case. *See Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (utilizing the *Frankenhauser* factors). "Although a district court has considerable leeway in weighing the different factors, . . . the failure to balance at all requires remand . . .

9

to consider the respective interests." *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988). Here, the district court must apply the *Frankenhauser* test, even if in a flexible manner, when making its privilege determinations. *Coughlin*, 946 F.2d at 1160 (instructing the district court to consider the *Frankenhauser* factors on remand in determining whether documents are discoverable).

Additionally, the law enforcement privilege is bounded by relevance and time constraints. Petitioner argues that documents pertaining to "individuals who are under investigation, or who were investigated by ICE [Immigration and Customs Enforcement] in the past, or who are suspected of violating the criminal or civil provisions of treaties, statutes, executive orders and presidential proclamations administered by ICE" are protected. Petitioner expands the privilege's scope too broadly. Several types of information probably would not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions. Furthermore, the privilege lapses after a reasonable period of time. *See Brown*, 430 F.2d at 1215; *Am. Civil Liberties Union v. Finch*, 638 F.2d 1336, 1344 (5th Cir. Mar. 1981) ("Even the files of active law enforcement agencies lose their privileges after particular investigations become complete.") (dicta).

10

Therefore, the privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document.

<u>IV.   CONCLUSION</u>

The district court erred when determining that no law enforcement privilege exists in the Fifth Circuit. Based on that erroneous legal conclusion, the court failed to review the documents and erroneously ordered production. The case is remanded to the district court for an *in camera* examination of the documents. The court should determine whether any of the documents are protected by the law enforcement privilege in accordance with this opinion. To assist the court in its review, the court may request additional information or hold additional proceedings. We are confident that in making its determinations, the court will be mindful of the need to balance Respondents' right to seek discovery in the legitimate pursuit of its claims with Petitioner's privilege to prevent disclosure of information that might impede important government functions such as conducting criminal investigations, securing the borders, or protecting the public from international threats.

The writ of mandamus is dismissed without prejudice.

DENNIS, Circuit Judge, concurring:

I respectfully concur in the majority's decision to dismiss the petition for mandamus without prejudice. The petitioner has failed to show that this case presents an extraordinary situation calling for the drastic remedy of mandamus. Because of the manner in which the matter was presented in the district court, the petitioner has failed to show that its right to issuance of the writ is "clear and indisputable" by demonstrating that there has been a "'usurpation of judicial power" or a "clear abuse of discretion."[1]

---

[1]See  Vioxx Prods. Liab. Litig. Steering Comm. v. Merck and Co., 2006 WL 1726675 (5th Cir. May 26, 2006) (Dennis, J., concurring in part and dissenting in part):

The Supreme Court has held that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. Kerr v. U.S. Dist. Court for Northern Dist. of California, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (citing Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382-385, 74 S.Ct. 145, 98 L.Ed. 106 (1953); Ex parte Fahey, 332 U.S. 258, 259, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947)). The Court has observed that the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its

Furthermore, I agree with the majority's recognition, discussion and delineation of the law enforcement privilege, as well as its approval of <u>in camera</u> inspections applying the <u>Frankenhauser</u> factors and the majority's admonitions that the

prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" <u>Will</u>, 389 U.S. at 95 (quoting <u>Roche v. Evaporated Milk Assn.</u>, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)). And, while the courts have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," Will 389 U.S., at 95, still "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." <u>Will</u>, 389 U.S. at 95.

.... Accordingly, the Supreme Court has set forth particular conditions for issuance of mandamus. Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, <u>Roche v. Evaporated Milk Assn.</u>, <u>supra</u>, 319 U.S., at 26, 63 S.Ct., at 941, and that he satisfy "the burden of showing that (his) right to issuance of the writ is 'clear and indisputable.'' <u>Banker's Life & Cas. Co. v. Holland</u>, 346 U.S., at 384, 74 S.Ct., at 148 (quoting <u>United States ex rel. Bernardin v. Duell</u>), 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899); <u>Will v. United States</u>, <u>supra</u>, 389 U.S., at 96, 88 S.Ct., at 274. Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed. <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 112 n. 8, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964); <u>Parr v. United States</u>, <u>supra</u>, 351 U.S., at 520, 76 S.Ct., at 917. <u>See also</u> <u>Technitrol, Inc. v. McManus</u>, 405 F.2d 84 (C.A.8 1968), <u>cert</u>. <u>denied</u>, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775 (1969); <u>Pacific Car & Foundry Co. v. Pence</u>, 403 F.2d 949 (C.A.9 1968); <u>Kerr</u>, 426 U.S. at 403.

Nor is mandamus a substitute for appeal, "even though hardship may result from delay and perhaps unnecessary trial." <u>Kerr</u>, 426 U.S. at 404 (citing <u>Ex parte Fahey</u>, 332 U.S. at 259-260; <u>Bankers Life & Casualty Co.</u>, 346 U.S. at 382-383; <u>United States Alkali Export Ass'n v. United States</u>, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554,; <u>Evaporated Milk Ass'n</u>, 319 U.S. at 31). "The writ is appropriately issued, however, when there is 'usurpation of judicial power' or a clear abuse of discretion." <u>Bankers Life & Casualty Co.</u>, 346 U.S. at 383.

privilege is bounded by relevance and time constraints. I write separately, however, to emphasize that our circuit's case law defines the law enforcement privilege as "a qualified privilege protecting investigative files in an ongoing criminal investigation," <u>Coughlin v. Lee</u>, 946 F.2d 1152, 1159 (5th Cir. 1991), and the petitioner does not argue for or request extension of the privilege to anything else. Accordingly, the suggestion in the majority's conclusion that the privilege may affect "information that might impede important government functions such as...securing the borders, or protecting the public from international threats," is only dicta and cannot be taken as modifying our precedents.